CALVIN CROUCH, Appellee, v. NATIONAL LIVESTOCK REMEDY COMPANY et al., Appellants.

52

JANUARY 17, 1928.

*Martin & Alexander,* for appellants.

*F. J. Lund* and *George D. Thompson, Jr.,* for appellee.

FAVILLE, J.—I. The appellant H. C. Moorman is engaged in the business of manufacturing live-stock remedies, under the name and style of "National Livestock Remedy Company (not Inc.)." The principal place of business is in Chicago. Said company sold its products directly to the consumer, through agents; and one L. A. (Lute) Meyers, of Webster City, Iowa, was such a salesman.

Service of the original notice in this cause was had upon Meyers, he being described in the return of service as "agent of said corporation." The appellants entered a special appearance, and by motion attacked the jurisdiction of  the court, contending that the person upon whom the service of original notice was had was not such an agent as may be served with an original notice, in order to bring the alleged principal into court. It was further alleged that the appellants never had an office or agency at Webster City, and that Meyers had no office at said place; and appellants asked that the service be quashed. The court overruled the motion. Thereafter, the appellants filed answer, and trial was had. It is contended that there was error as to this matter. The error, if any, was waived.

II. On February 3, 1922, appellee purchased 1,000 pounds of "National Hog Powder." The purchase was made through Meyers. Before the purchase of the powder, representations as  to the same and how to use it were made orally, and also by literature. Some literature and directions appeared in each sack containing the powder, upon its delivery. The powder was represented to prevent worms, to keep the blood in good condition, to aid in digestion, and to keep the liver and bowels in a healthy condition. Special instructions for feeding National Hog Remedy were furnished in a printed pamphlet. The appellee claims that he used the remedy according to directions, and that thereafter quite a number of his hogs died, as he claims, as a result of the feeding of the powder. It is shown by the record that this powder has been manufactured by appellants since 1914, from the same formula, and the ingredients of the powder, according to formula, are:

"Wormseed 1%, May apple root 1%, poke root 1%, char-

coal 8%, sulphate of iron 2%, sulphur 3%, bone phosphate 12%, sulphate of soda 72%."

The appellee testified that he took samples from each of two sacks of powder which he had purchased, to a chemist in Des Moines, for analysis, and the chemist testified that the analysis of one of said samples showed:

"Sodium sulphate or Glauber salts 52.68%, magnesium sulphate or epsom salts 16.3%, sulphate of iron or copperas 11.58%, sulphur 4.4%. The balance consisted of charcoal, wormseed, tobacco, etc."

He further testified that the other sample contained:

"Magnesium sulphate or epsom salts 14.3%, sodium sulphate or Glauber salts 49.08%, sulphate of iron 16.7%, sulphur 5%. The balance is just charcoal, wormseed, tobacco, etc."

The testimony tends to show that the appellee had one bunch of hogs which he kept in a separate pen, in close proximity to the others, to which lot of hogs none of the remedy was fed by force feeding; and he claims that none of said hogs became sick.

A veterinarian was called by the appellee in January, when the hogs were sick, and he testified that he found the sick hogs suffering from profuse diarrhea, and some of them vomiting, and two of them dead; that he made a post-mortem examination of the two dead hogs, and found a dropsical condition in the lining of the stomach, a severe inflammation through the bowels, and congested liver and kidneys; that this condition is called salt poisoning; that he made an investigation of the herd as to other ailments, and there was none that he could discover. He and three other veterinarians gave testimony to the effect that the use of the powder by the force feeding, as directed, would be harmful, and that the powder contained too much salts to be administered in the manner recommended and directed, and that salt poisoning of an animal is a result of an overdose, or doses, of a compound containing the ingredients according to the formula, or according to the analysis made by the chemist.

Appellee testified that there was no epidemic among hogs in that vicinity at the time in question.

Appellee introduced testimony of other farmers who had purchased some of the same remedy, for the purpose of showing the effect upon their hogs. Appellants introduced testimony of

farmers who had purchased the same remedy, showing no evil effects upon their hogs. The testimony of appellee and some of his witnesses is to the effect that the compound was not similar in color in different sacks.

A veterinarian, on a hypothetical question asking, "What would you say was the cause of the death and general condition of these hogs?" answered, "I think that condition would be termed as salt poisoning."

Another veterinarian was asked:

"Would you be able to give a reasonably accurate opinion as to what caused the death and the injury to the hogs that I have described?"

He answered, "Yes, sir." He was also asked:

"What, in your judgment, would you say caused the death and the injury to the animals I have described?"

He answered:

"Well, the first one is due to the acute action,—that is, the initial action, and then because they probably lived from three to six months, probably succumbed to hardening of the liver, which is a direct result of feeding or overfeeding of salts."

He also testified that he made a post-mortem examination of some of the hogs of the witnesses Larson and Lee, and found practically the same conditions that he found in the hogs of the appellee.

A veterinarian testified as an expert in behalf of the appellants. His evidence is in direct conflict with that of appellee's experts.

The stock food was purchased by means of a written order. Concurrently with the signing of said order, the appellee executed his promissory note for the purchase price. The appellee's petition consists of two counts, the first being based upon false representations or implied warranty, and the second one incorporates the first count as a part of it, and in addition thereto alleges negligence on the part of the appellant company.

The appellants answered by general denial, and filed a counterclaim for the amount due on the note.

At the close of appellee's evidence, the appellants moved for a directed verdict, and renewed the same at the close of all the evidence. Appellants predicate error in overruling said motion. They argue that there is no causal connection shown

56

between the giving of the remedy and the injury and death of the hogs. They rely upon *Hollingsworth v. Midwest Serum Co.*, 183 Iowa 280. In that case, the reversal of the lower court was based upon the conclusion that there was no sufficient showing of negligence on the part of the defendant. We said:

"Briefly stated, the finding of negligence is not sustained by the evidence. We have no occasion, therefore, to consider the question of proximate cause * * *."

In the instant case we are disposed to hold that the evidence was sufficient to carry the case to the jury on the question of proximate cause. See *Kennedy v. Plank*, 120 Wis. 197 (97 N. W. 895); *Hertzler v. Manshum*, 228 Mich. 416 (200 N. W. 155); *Hendershot v. Western Union Tel. Co.*, 106 Iowa 529; *Davis v. Van Camp Packing Co.*, 189 Iowa 775; *Swift & Co. v. Redhead*, 147 Iowa 94.

III. The appellants contend that the plaintiff is estopped from recovering by reason of his having given his promissory note for the purchase price of the powder, and because of his subsequent conduct with reference thereto. The giving of the note at the time of the purchase of the remedy would not constitute an estoppel to recovery for loss occasioned by its subsequent use. This is obvious. Moreover, no estoppel is pleaded.

IV. After verdict, the appellants filed motion in arrest of judgment, and for judgment notwithstanding the verdict, based upon the grounds that there is no allegation in the petition that the damages suffered were unpaid, and that there is no allegation of freedom from contributory negligence on the part of appellee. The petition does allege freedom from contributory negligence, and payment is an affirmative defense, to be raised by the defendant. *Howerton v. Augustine*, 130 Iowa 389. The motion was properly overruled as to these grounds.

V. The court in one of its instructions told the jury that, if it had been proven by a preponderance of the evidence that the "National Hog Powder" for which the note was given was without value, and was worthless for the purpose sold, then and in that case the appellants could not recover upon their counterclaim. Manifestly this is correct. See *Swift & Co. v. Redhead*, supra.

VI. The appellants make general complaint as to the instructions. The appellee, in the second count of his petition, based on negligence, incorporated therein the first count of his petition, based upon fraudulent representations or implied warranty; and the court in the instructions told the jury, in substance, that, before the appellee could recover, it must be established by a preponderance of the evidence: (1) that the appellant company, through its agent Meyers and through its printed directions for the use of said hog remedy, at the time of or before the purchase of the remedy by the appellee, represented that said remedy, as compounded, was wholesome and uninjurious, and, if fed according to the directions furnished, would give beneficial results to the hogs thus fed; (2) that the said remedy, as compounded and as sold to the appellee by the appellants, when used according to the directions as furnished by the appellants to the appellee, was injurious to hogs, and would produce damage to them; (3) that the appellants knew, or by the use of due care should have known, that injurious results and damage would result from the feeding of the said remedy according to the directions as furnished and given by the appellants to the appellee; (4) that the appellee was ignorant of the contents and ingredients of the said remedy, and was ignorant of the probable result that would follow the feeding of the same, if fed according to the directions furnished to him by the appellants; (5) that the appellee did administer said remedy to said hogs in the amount and in the manner specified in the directions given him by the appellants; (6) that damages resulted to appellee's hogs because of the feeding of said remedy to the said hogs, and the amount of such damages; (7) that it was the appellants' negligence that was the proximate cause of the loss of and damage to the appellee's hogs; (8) that the giving of said remedy to appellee's hogs, in the amount and in the manner directed, was the proximate cause of the damage to said hogs; (9) that the appellee must himself be free from any negligence contributing to any damage that may have occurred.

We think that appellants cannot complain of these instructions. Under the record, it does not appear that the instructions were prejudicial to the appellants.

VII. The appellants complain because the court permitted

58

experts to answer hypothetical questions before there was evidence substantiating all matters assumed therein. The appellee was absent during the first day or two of the trial, and this procedure was adopted in order to expedite the trial. Evidence is frequently admitted out of order, and it does not constitute error. In *Mucci v. Houghton,* 89 Iowa 608, it is held not to be error to allow hypothetical questions to be asked, based on facts not yet shown, provided such facts are subsequently shown in the progress of the trial. After the testimony was introduced, tending to establish the facts which were assumed in the questions previously propounded to the experts, there was no motion made by the appellants to exclude their testimony. The hypothetical questions propounded did substantially comply with the record as completed after the introduction of the testimony of the appellee, and the court carefully and fully instructed the jury, in substance, that, if it found that one or more of the assumptions of facts in the hypothetical question had not been established by the evidence, then the testimony given by the expert, based upon the hypothetical question, would be destroyed, and should be disregarded. There is no merit in the appellants' contention at this point.

VIII. The following question was propounded to experts offered by appellee: "What, in your judgment, would you say caused the death and the injury to the animals I have described?" The objection of the appellants was that the question was hypothetical, incompetent, irrelevant, and immaterial, and based upon no facts or state of facts in the record, or at least not founded upon a sufficient state of facts in the record. The question was a clear invasion of the province of the jury, and was improper. It left nothing for the jury to determine. The answer of the witness would decide the whole case. Such a question has been repeatedly condemned by this court. *State v. Rainsbarger,* 74 Iowa 196, 204; *Nosler v. Chicago, B. & Q. R. Co.,* 73 Iowa 268; *In re Estate of Betts,* 113 Iowa 111, 116; *Sachra v. Town of Manilla,* 120 Iowa 562, 567; *Martin v. Des Moines Edison L. Co.,* 131 Iowa 724; *Bruggeman v. Illinois Cent. R. Co.,* 147 Iowa 187, 196; *State v. Bennett,* 143 Iowa 214; *Sever v. Minneapolis & St. L. R. Co.,* 156 Iowa 664; *Kirby v. Chicago, R. I. & P. R. Co.,*

173 Iowa 144; *Budde v. National Travelers Ben. Assn.,* 184 Iowa 1219.

Numerous authorities from other jurisdictions are cited in the cases supra, sustaining this general rule. It is true that, in *State v. Hessenius,* 165 Iowa 415, we recognized an exception in a criminal case that involved the death of a human being. In *Kirby v. Chicago, R. I. & P. R. Co.,* supra, we said:

"Recurring again to the rule applicable to the examination of experts, it should be said that we have relaxed it somewhat when the question arises as to the cause of the death of a human being. *State v. Hessenius,* 165 Iowa 415. Some other exceptions have been made, as in *Searles v. Northwestern Mutual Life Ins. Co.,* 148 Iowa 65. We are not prepared at this time to enlarge these exceptions so as to approve the form of examination used on this trial."

It is contended, however, that the objection to the testimony was insufficient to raise the question now urged.

We have recognized, as a general rule, that the objection that evidence is "immaterial, irrelevant, and incompetent" is not sufficient to raise a specific objection upon appeal. In *Brier v. Davis,* 122 Iowa 59, we said:

"According to some authorities the sweeping assertion that testimony is 'incompetent and immaterial,' or 'irrelevant, incompetent and immaterial,' does not apprise the court of the precise point upon which counsel relies, and error cannot be predicated upon the refusal of the court to entertain it. Jones on Evidence, 897."

See, also, *State v. Madden,* 170 Iowa 230; *Coad v. Schaap,* 144 Iowa 240; *In re Estate of Hoyt,* 180 Iowa 1250; *Remington v. Machamer,* 192 Iowa 1098.

But there are exceptions to this general rule. In *International Harv. Co. v. Chicago, M. & St. P. R. Co.,* 186 Iowa 86, we said:

" 'The value and sufficiency of the general and all-inclusive objection, "incompetent, immaterial, and irrelevant," depends largely upon the nature of the evidence against which it is urged. * * * Thus, if the grounds of objection are perfectly obvious, and the evidence is wholly inadmissible for any purpose, the general objection is sufficient.' 9 Encyc. of Evidence 71, 73. And see *Sparf v. United States,* 156 U. S. 51; *First Nat. Bank v.*

*Carson,* 30 Neb. 104 (46 N. W. 276) ; *Swan v. Thompson,* 124 Cal. 193 (56 Pac. 878) ; *Roche v. Llewellyn,* 140 Cal. 563 (74 Pac. 147 ; *Alcorn v. Chicago & A. R. Co.* (Mo.), 14 S. W. 943 (16 S. W. 229) ; *Parker v. United States,* 1 Ind. T. 592 (43 S. W. 858). The objection that evidence is incompetent is sufficient where the evidence is incompetent for any purpose. 9 Encyc. of Evidence 73; *Iverson v. McDonnell,* 36 Wash. 73 (78 Pac. 202) ; *State v. Hendrick,* 70 N. J. L. 41 (56 Atl. 247) ; *Hynes v. Hickey,* 109 Mich. 188 (66 N. W. 1090) ; *Dedric v. Hopson,* 62 Iowa 562; *Texas & P. R. Co. v. Gay,* 88 Tex. 111 (30 S. W. 543). The objection that testimony is incompetent and immaterial is sufficient, where the grounds of objection are discernible. *Guarantee Co. v. Phoenix Ins. Co.,* 124 Fed. 170. If the evidence could not have been made competent, then the objection is sufficient. *Tooley v. Bacon,* 70 N. Y. 34. It has been held, when the opinion called for is wholly incompetent on its face for any purpose, and the ground of objection could not be obviated, a general objection is sufficient. 9 Encyc. of Evidence 92; *Wallace v. Vacuum Oil Co.,* 128 N. Y. 579 (27 N. E. 956) ; *Rodgers v. Fletcher,* 13 Abb. Pr. (N. Y.) 299. Where evidence is immaterial, an objection to it as immaterial is sufficiently specific. *M. Groh's Sons v. Groh,* 177 N. Y. 8 (68 N. E. 992) ; *Turner v. City of Newburgh,* 109 N. Y. 301 (4 Am. St. 453) ; *Ward v. Kilpatrick,* 85 N. Y. 413. 'An objection to evidence as "irrelevant" is sufficient, where the irrelevancy appears from the evidence itself.' *McDermott v. Judy's Admr.,* 67 Mo. App. 647; *Owen v. Frink,* 24 Cal. 171. So, if the particular objection appears on the face of the evidence itself *(Wood v. American Life Ins. Co.,* 7 How. [Miss.] 609) ; or where the evidence is not admissible for any purpose *(Western Coal & Min. Co. v. Berberich,* 94 Fed. 326; *Taylor v. Adams,* 115 Ill. 570; *State v. Hilsabeck,* 132 Mo. 348 [34 S. W. 38] ; *Neely v. State* [Tex.], 56 S. W. 625). Whether or not it aids appellant that less definite objections than .it made will base review is, however, not very controlling.''

In this case, it is a very close question as to whether or not the objection is sufficient to raise the question now presented. The specific vice of the question was that it invaded the province of the jury.

Two cases have been brought to our attention that involve

a somewhat similar situation. In *Longan v. Weltmer*, 180 Mo. 322 (79 S. W. 655), the Supreme Court of Missouri considered a situation where a hypothetical question was propounded to an expert, and it was objected to for the reason that "it is not a proper hypothetical question." The court held this objection to be too general, and that it amounted to no objection at all.

In *Howland v. Oakland Cons. Street R. Co.*, 110 Cal. 513 (42 Pac. 983), the Supreme Court of California considered a case where a hypothetical question was propounded to an expert, and the court held that the question itself was so faulty in its form that an answer to it could have done the appellant no harm, since the answer would have been practically meaningless; but the court further observed that the objection was that the question was "irrelevant, immaterial, and incompetent, and not a proper hypothetical question." It was held that this form of objection was too general to call the court's attention to the particular vice urged on appeal.

It cannot fairly be said, in considering the objection in the case at bar, that it points out the specific claim that the question invaded the province of the jury, and was incompetent for that reason. We are disposed to hold that the objection as made was too general to raise the question now urged by appellants, and we would not predicate reversible error upon the overruling of the objection in this form.

IX. The appellee offered evidence of certain witnesses who were farmers and hog raisers. The substance of their testimony was that they had purchased hog powder of the appellants, and  had fed the same to their hogs by the process of force feeding, substantially in accordance with the directions, and that thereafter, some of their hogs were taken sick, and some died. One of the witnesses testified that he fed the powder to 150 or more of his hogs, and that 107 of them died within a period of six weeks, and that some of them died later, and six or seven months after the feeding of the powder. Another of said witnesses testified that he fed the powder to 150 of his hogs, and that from 60 to 80 of them died, from six weeks to three months after the feeding of the powder.

These witnesses also testified to a difference in the color, and as to a difference in the coarseness or fineness of the powder,

from that previously received by them from the appellants. A veterinarian was also allowed to testify that he made a postmortem examination of some of the hogs of these witnesses, and that he found substantially the same condition as was found by him on the post-mortem examination of the hogs of the appellee. Proper objections were made to all of this testimony. The objections were overruled. It is unnecessary that we set out the evidence by question and answer. The objections were timely.

The admission of this testimony was prejudicial to the appellants, and violated well established and well recognized rules. In the first place, there is no showing whatever that the powder that the witness received was identical with the powder that was sold to appellee. The fact that a witness for appellants testified that the appellants manufactured the powder that the appellants sold according to one general formula, was not sufficient to justify the admission of this testimony, under all the facts shown in this record. The analysis of two sacks of powder which the appellee purchased showed a very substantial difference in the amount of ingredients therein contained. There is nothing whatever, except an inference from the testimony as to the general formula, to show that the contents of the powder that was fed by the witness Larson were identical with any of the powder that was sold to the appellee. It was not analyzed, and its contents are not shown.

The analysis of the two different specimens from the packages sold to the appellee is not proof that the packages sold to the witness Larson at an entirely different time and place contained the same ingredients, or in the same proportion, as those contained in the packages sold to the appellee, nor which one, if either, it resembled. In *State v. Blydenburg,* 135 Iowa 264, the attempt was made to show that the defendant had bought "Rough on Rats," containing arsenic. A pharmacist was permitted to testify that he had taken another package of Rough on Rats from his stock of goods, bearing a label and trade-mark like the package sold to the defendant, and an expert was permitted to testify that he had made a partial analysis of the contents of this latter box, and had found arsenic in it. We held that the objections to this evidence should have been sustained. In the *Blydenburg* case, the packages were sealed. Not so in the case at bar. We said:

"The State, therefore, succeeded in proving, not that the appellant purchased arsenic, or any article containing arsenic, but that some proportion of that poison was found in another package bearing a similar label and mark, taken from the same pharmacist's stock."

This was held to be error. In the case at bar, the witness Larson testified that the packages of powder purchased by him did not appear to be alike, that some shipments were whiter than others, and some were gray. There is nothing whatever to show that the shipments to him, even in appearance, to say nothing of chemical content, were the same as those sold to the appellee, except that the company used but one formula. The samples taken from two packages of appellee's purchase were proven not to be alike. Who can tell, then, what were the contents of the unsealed packages bought by Larson at a different time and place?

But aside from this, there is no showing that the witness's hogs were of the same kind or age, or were in the same condition physically as the hogs of the appellee. There is no sufficient showing that the hogs of the witness were fed and cared for in the same manner as the hogs of the appellee. Furthermore, there is no showing that the conditions surrounding the witness's hogs prior to and at the time of the feeding were the same as those surrounding the hogs of appellee.

It is also apparent that the evidence as to the death of the hogs is remote from the claimed cause. To say that hogs fed at a certain time died "six or seven months" after the feeding, or "from six weeks to three months" thereafter, is to open a wide door for speculation and conjecture as to whether there is any causal connection between the feeding and the subsequent death at such a remote period. In order that there may be proof that similar causes produce like results, there must also be proof of substantial similarity of all the conditions that might enter into or affect the result. Unless these are shown, the matter necessarily becomes one of conjecture and speculation. We have repeatedly held that such evidence is not admissible. *Phillips v. Leuth,* 200 Iowa 272; *Bell v. Chicago, B. & Q. R. Co.,* 64 Iowa 321; *International Harv. Co. v. Chicago, M. & St. P. R. Co.,* 186 Iowa 86; *Wilkins v. Omaha & C. B. R. & B. Co.,* 96 Iowa 668; *Kirby v. Chicago, R. I. & P. R. Co.,* 173 Iowa 144; *Mier v.*

*Phillips Fuel Co.,* 130 Iowa 570; *Osborne & Co. v. Simmerson,* 73 Iowa 509. See, also, *City of Bloomington v. Legg,* 151 Ill. 9 (37 N. E. 696); *Campbell v. Russell,* 139 Mass. 278 (1 N. E. 345); *Union Pac. R. Co. v. O'Brien,* 161 U. S. 451.

For the error pointed out, the case must be—*Reversed.*

STEVENS, C. J., and EVANS, ALBERT, and KINDIG, JJ., concur.