State of Iowa, Appellee, v. Joe Cordaro et al., Appellees; Vernon W. Lynch, Appellant.

No. 40576.

NOVEMBER 18, 1930.

*Ralph N. Lynch,* for appellant.

*Carl S. Missildine,* County Attorney, for the State, appellee.

*Bradshaw, Schenk & Fowler,* for Wilbert J. Smith, appellee.

KINDIG, J.—On December 10, 1926, the defendant Joe Cordaro was indicted by a Polk County grand jury for the crime of uttering a forged instrument. Thereafter, during the January,

1927, term of the Polk County district court, Cordaro was convicted by a jury, and later, the district court sentenced him to serve a term of 15 years in the penitentiary and pay a $1,000 fine. The appeal bond was fixed at $1,000. Cordaro appealed from the Polk County district court to the Supreme Court, and executed a bond therefor, as principal. Wilbert J. Smith, defendant and cross-petitioner and appellee, signed that bond, as surety. As a result of the appeal, the Supreme Court, on March 13, 1928, affirmed the judgment of the district court. Hence, the principal and surety on the appeal bond became liable for the $1,000 fine and costs, according to the conditions of that bond. This proceeding was then instituted by the State against the principal and surety on the bond, to recover the $1,000 fine and costs. Whereupon, Wilbert J. Smith, the surety, defendant in the State's action to recover on the bond, became a cross-petitioner against the cross-defendant and appellant, Vernon W. Lynch.

In the cross-petition, the appellee Wilbert J. Smith asked judgment against the appellant, Vernon W. Lynch, for any amount of money which the said Smith might, under the fore-going appeal bond, be adjudged liable for by the district court. The basis for recovery set forth in the cross-petition was that Lynch, the appellant, had agreed to indemnify and save the appellee Smith harmless from any liability on the bond. Judgment was entered against Cordaro and Smith in favor of the State. No appeal is taken therefrom, and therefore the same has become a finality. Furthermore, the jury returned a verdict in favor of the appellee Smith against Vernon W. Lynch, appellant, on the issues raised by the cross-petition, and judgment thereon was entered accordingly. From this Vernon W. Lynch has appealed, and the matters involved in the cross-petition are the only issues now before us.

Many reasons are assigned by the appellant, Lynch, as to why the judgment of the district court should be reversed; but we find it necessary to consider but one of them, and that one relates to the action of the district court in admitting in evidence an exhibit known in the record as ''3,'' which, in words and figures, is as follows:

"Exhibit 3

"No. 108. 9/17, 1926. Received of George Cordaro Thirty-nine Hundred and no/100 Dollars to be used for the purpose of settlement with Surety Companies $3900.00. Sgn. Vernon W. Lynch."

Vernon W. Lynch, who signed the foregoing exhibit, is a practicing attorney in Des Moines, and the appellant here. Appellant was the attorney for the defendant Cordaro in the Polk County district court and the Iowa Supreme Court, respectively, during the trial and appeal of the case above-mentioned, known as "State of Iowa v. Joe Cordaro." Accordingly, appellant prepared and procured the appeal bond aforesaid, on which the appellee Smith was the surety. For his cause of action against the appellant in the cross-petition, the appellee states, among other things:

" * * * 3. That to induce this defendant [the appellee] to sign said bond [the appeal bond above-mentioned], said defendant [appellant] Vernon W. Lynch orally stated, represented, and promised to this defendant [appellee] that he, the said Lynch [appellant], had collected from said defendant Joe Cordaro [the principal on the bond] ample funds and security to pay said fine ($1,000) imposed by the district court of Polk County, Iowa, and all costs that might be taxed against said Cordaro in the event of an affirmance of his said conviction by the Supreme Court of the state of Iowa; that this defendant [appellee] need never worry about paying said bond; that he, the said Vernon W. Lynch [appellant], would see to it that said bond would be paid, and that this defendant [appellee] would be indemnified and saved harmless. That this defendant [appellee], in consideration of, and relying upon said inducements, statements, representations, promises, and agreements of the said defendant Vernon W. Lynch [appellant], and at the special instance and request of said Lynch [appellant], thereupon signed said bond as surety for said defendant Joe Cordaro.

"4. That this defendant [appellee], except for the inducements, promises, and representations of said defendant Vernon W. Lynch [appellant], would not have signed said bond as aforesaid. * * *"

228

Those allegations of the cross-petition were denied by the appellant.

I. During the trial, the appellee, in order to prove the aforesaid averments of the cross-petition, offered, and, over appellant's objections, introduced in evidence, the Exhibit 3 above set forth.

George Cordaro, named in Exhibit 3, was Joe Cordaro's father, and Jim Cordaro, hereinafter mentioned, is Joe's brother. It is to be recalled that Exhibit 3 declares that the receipt of money there acknowledged by appellant was from George Cordaro. Likewise, that exhibit specifically states the reason the appellant was intrusted with the money: to wit, "for the purpose of settlement with the surety companies." Under the record, it fairly appears that "surety companies," before the receipt was given, had signed certain bonds wherein Joe Cordaro was principal. Resulting from that transaction appears to have arisen an obligation on Joe Cordaro's part in favor of said surety companies. Then, for the purpose of discharging that obligation, the $3,900 amount named in the receipt, Exhibit 3, was given to the appellant. Nothing in the receipt or in the entire record, however, indicates that the said $3,900 came from Joe Cordaro. Nor is it shown by that instrument or the whole record that such money could be used by Lynch for any other purpose than to settle with the surety companies. Appellee Smith, in his cross-petition, it is to be recalled, as a foundation for a cause of action, stated that appellant had obtained sufficient money from the aforesaid defendant Joe Cordaro (not George or Jim Cordaro) for the express purpose of satisfying any contemplated liability on the appeal bond. Although the exhibit indicates that the money named therein came from George Cordaro, yet it appears in that part of the record relating to appellant's evidence that said funds may have belonged to Jim Cordaro, Joe's brother. Such evidence was produced subsequent to the introduction of the exhibit, and after appellee had rested his case. Perhaps the money did not belong to George Cordaro, but this does not mean that it was the property of the defendant Joe Cordaro. The inference to be drawn in this regard is that the money was the property of Jim Cordaro. Moreover, that portion of the exhibit which limited the use of the money to the settlement of the surety companies' cases is still unimpeached. Nothing in the

record suggests that the funds named in the exhibit could be used for any other purpose. Appellee Smith had the burden of showing the materiality of the exhibit, and failed to do so.

Consequently Exhibit 3 fails to support any allegation in the cross-petition; for the receipt, considered with the whole record, shows that the money was obtained from George or Jim Cordaro, rather than Joe, and that it was to be used for the purpose of settling with certain surety companies, and not to secure the appellee from loss on the appeal bond in question. So there are at least two reasons why the exhibit does not support the allegations of appellee's cross-petition. They are: First, that the money named did not come from Joe Cordaro; and second, that it should be used for a specific, definite purpose, which was to settle with the surety companies. That exhibit, therefore, furnished no support whatever for appellee's cause of action, and hence was not admissible, because immaterial.

II. But it is said by the appellee that the appellant did not make proper objections to the introduction of the exhibit. Appellant did object when the offer was made, and at the close of  all the evidence, he moved the court to withdraw the exhibit from the jury's consideration. Both the objection and the motion were overruled. Two grounds are named in the objection to the exhibit. Generally stated, they are that the exhibit shows on its face that it is incompetent and immaterial, because not tending to prove any issue in the case. Irrelevancy was not specifically named in the objection, and the appellee contends that immateriality was not sufficient to exclude the exhibit. With this, under the facts here presented, we do not agree. "Immaterial," is defined by Webster's New International Dictionary to mean, "of no substantial consequence; without weight or significance; unimportant." Another definition, given by the Kentucky Court of Appeals, in *Ray v. Commonwealth*, 207 Ky. 96 (268 S. W. 804), is:

"* * * the word 'material' simply means 'of consequence,' or 'not to be dispensed with * * *.'"

Also, the Supreme Court of Washington, in *Hansen v. Sandvik*, 128 Wash. 60 (222 Pac. 205, 207,) on page 63, said:

" 'Material' is defined as 'important,' 'more or less neces-

sary,' 'having influence or effect,' etc. Black's Law Dictionary. And 'a material fact is one that is essential to the claim or defense, application, etc., without which it could not be supported.' Black's Law Dictionary. The word 'materially' means and is understood the same in the ordinary vernacular as in its technical definition.''

To the same effect is a discussion by the Oklahoma Supreme Court in *Connecticut Fire Ins. Co. v. George*, 52 Okla. 432 (153 Pac. 116, 119), on page 441:

'' 'Webster defines ''material'' to be something ''of solid or weighty character; substantial; of consequence; not to be dispensed with; important; specific; especially law, such as does or would affect the determination of a case, the effect of an instrument, or the like; constituting a matter that is entitled to consideration; such as must be considered in deciding a case on its merits.'' ' (*Thompson v. State*, 6 Okla. Cr. 50, 117 Pac. 216.) 'Evidence offered in a cause, or a question propounded, is material when ''it is relevant and goes to the substantial matters in dispute, or has a legitimate and effective influence or bearing on the decision of the case.'' (8 Ency. of Ev. p. 550.)' ''

Also, see *Faulkner v. Bridget*, 110 Mo. App. 377 (86 S. W. 483).

As to the decisions of this court, it is found that we said in *Crouch v. National Livestock Rem. Co.*, 205 Iowa 51, on page 60:

''The objection that testimony is incompetent and immaterial is sufficient, where the grounds of objection are discernible.''

On many occasions, this court has sustained the exclusion of evidence because it was not material. *Boileau v. Records & Breen*, 165 Iowa 134 (local citation 140) ; *Campbell v. C., R. I. & P. R. Co.*, 45 Iowa 76 ; *Jones v. Hopkins*, 32 Iowa 503 (local citation 505) ; *Walthelm v. Artz*, 70 Iowa 609 (local citation 610) ; *Sullivan v. Herrick*, 161 Iowa 148 (local citation 150).

There is a distinction between materiality and relevancy, and we are not here confusing the two meanings, as generally used in discussing evidence. Without a holding, however, that materiality and relevancy are equivalent, it is apparent that the objection here interposed was sufficient. If the exhibit was not

material or competent under the issues, it should not have been admitted. Obviously it was not material, because the contents of the receipt furnished no support of any kind or nature for the allegations in appellee's cross-petition. Recalling again the definition of "immaterial," it is remembered that, according to the universal meaning, it signifies the following: "Of no substantial consequence; without weight or significance; unimportant."

Therefore, if the exhibit offered, when considered in relation to the cross-petition, had no "substantial consequence, was without weight, had no significance, and was unimportant," it was inadmissible. Appellant's objection, therefore, although not including the word "irrelevant," was broad enough to exclude the evidence. The objection contained two grounds, to wit, incompetency and immateriality. Over that objection, the evidence should not have been admitted.

III. Furthermore, appellee contends that the objection was so general as not to require the trial court's recognition. During our discussion in *Crouch v. National Livestock Rem. Co.* (205 Iowa 51), supra, on page 59, the following language appears:

"We have recognized, as a general rule, that the objection that evidence is 'immaterial, irrelevant, and incompetent' is not sufficient to raise a specific objection upon appeal."

Manifestly, however, the opinion in the *Crouch* case does not purport to lay that principle down as a rule affecting all cases. Contrary to that, the opinion expressly recognizes exceptions in these words:

"But there are exceptions to this general rule. In *International Harv. Co. v. Chicago, M. & St. P. R. Co.*, 186 Iowa 86, we said: 'The value and sufficiency of the general and all-inclusive objection "incompetent, immaterial, and irrelevant" depends largely upon the nature of the evidence against which it is urged. * * * Thus, if the grounds of objection are perfectly obvious, and the evidence is wholly inadmissible for any purpose, the general objection is sufficient.' * * * The objection that evidence is incompetent is sufficient where the evidence is incompetent for any purpose. * * * The objection that testimony is incompetent and immaterial is sufficient where the grounds of objection are discernible. * * * *Where evidence is immaterial, an objec-*

*tion to it as immaterial is sufficiently specific."* (The italics are ours.)

In the case at bar, the objection was specific, and pointed out that the exhibit showed upon its face its incompetency and immateriality. The effect of the objection was to call the court's attention to the fact that the exhibit did not sustain the allegations of appellee's petition because: First, the money therein named did not come from Joe Cordaro; and second, it was given for the purpose of settling with the surety companies, as distinguished from indemnifying the appellee.

This point urged by appellee, therefore, is without merit.

IV. Nevertheless, appellee continues to argue that the exhibit in question was material because of the following excerpts from appellee Smith's testimony:

"Q. What, if anything, was said [by the appellant]as to the amount of funds that Mr. Lynch [appellant] had to take care of the fine and costs under the bond, Exhibit 1? A. He told me  that he had taken a mortgage on Cordaro's home, —that is, on Joe Cordaro's home,—and that he had received around $5,000. From 1925 to 1927, there was no other lawyer acting for my mother and me. Our papers were left with him [appellant]. I reposed confidence in Mr. Lynch [appellant] at that time. Q. Now, when Mr. Lynch [appellant] spoke about the money that he had gotten, was there anything said by him as to where it came from? A. Yes, sir. He stated it came from the Cordaro family. George Cordaro is Joe Cordaro's father. Exhibit 3 is in Vernon Lynch's [appellant's] handwriting. Q. Mr. Smith [appellee], did Mr. Lynch ever say anything to you about an effort made on his part to settle with some surety company in respect to Joe Cordaro's case? A. Yes, sir. Q. What did he [appellant] say as to whether or not he had made settlement with the surety company? A. He said he could not settle with them. Q. And what, if anything, was said by Mr. Lynch [appellant] as to his having turned back to the Cordaros money that they had paid to him for that purpose? A. He said that the Cordaros had paid him that amount to try to settle with the bonding company, and that he had been unable to reach a settlement with them. Q. What, if anything, was said [by appellant] about the money that he had

[thus] received? A. And that he was retaining that money as security for any costs and fines that might accrue.''

Basing his contention upon the last answer, appellee insists that the exhibit was admissible. To bring about that result, appellee emphasizes the words ''fine or costs that might accrue.'' His theory. is that those words relate to the fine and costs under the bond for which he was surety. Clearly, however, there is no basis for appellee's conclusions in that regard. Even according to the appellee's version of what the appellant said upon the occasion in question, the words ''fine or costs that might accrue'' obviously referred to the surety companies' case, which appellant had attempted to settle. According to the questions and answers above set forth, no other idea was expressed. Appellee Smith was asked: ''And what, if anything, was said by Mr. Lynch [appellant] as to his having turned back to the Cordaros money that they had paid to him for that purpose?'' He answered that appellant said the same was being retained ''as security for any fine or costs that might accrue.'' Accrue where? Plainly, in the surety company case about which the appellant was talking. No other case there is mentioned. It is to be remembered that the money named in the exhibit has not been shown to be the property of Joe Cordaro, the defendant. Also, the exhibit positively indicates that the money was for the surety companies' cases. A conversion would result, therefore, if appellant used the money belonging to some person other than Joe Cordaro for a purpose not intended by the owner.

Surely, then, the statements of appellant did not, under the circumstances, make the exhibit admissible.

V. Finally, appellee Smith asserts that the exhibit was corroborative of the evidence tending to prove appellant's receipt of $5,000 from the Cordaros. As a foundation for that claim, appellee Smith refers to his own answer to the following question above quoted, and, for convenience, repeated here:

''What, if anything, was said [by the appellant] as to the amount of funds that Mr. Lynch [appellant] had to take care of the fine and costs under the bond, Exhibit 1? A. He told me that he had taken a mortgage on the Cordaros' home,—that is, on Joe Cordaro's home,—and that he received around $5,000.''

Although the appellant at this place in the record did say

that he had received the $5,000 for the purpose of taking care of the fine and costs on the appeal bond, yet Exhibit 3 would not become material; for the $5,000, according to the answer, was received from Joe Cordaro, or from the Cordaro family, for the express purpose of settling any loss on the appeal bond, while there is nothing to show that the money named in the exhibit came from Joe Cordaro at all, nor does it appear from the instrument, or otherwise, that the money therein named, even if delivered by George or Jim Cordaro (Joe's father and brother, respectively), could be used for anything except to settle the surety company cases. So the exhibit is not corroborative of the $5,000 transaction.

Under no stretch of the imagination, then, could it be said that the appellant had gotten the money named in the exhibit to secure appellee. Thus it is seen that the exhibit did not in any way corroborate a material issue, was immaterial, and should not have been admitted into the record. Prejudice is presumed because the district court committed this error. Manifestly, the jury would get the idea that Exhibit 3 corroborated in some way appellant's claim in reference to the security which appellee claims appellant was holding for him, to protect against loss under the appeal bond. Undoubtedly, the jury would be misled.

Wherefore, so far as it relates to the issues raised on the cross-petition, the judgment of the district court should be, and hereby is, reversed.—*Reversed.*

MORLING, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.