In re the MARRIAGE OF Jo Ann BRUNS and Douglas V. Bruns.

Upon the Petition of

Jo Ann Bruns, Petitioner–Appellee,

And Concerning

Douglas V. Bruns, Respondent–Appellant.

Douglas V. BRUNS, Plaintiff,

v.

IOWA DISTRICT COURT FOR LINN COUNTY, Defendant.

No. 94–482.

Court of Appeals of Iowa.

May 30, 1995.

James W. Affeldt and Tamra L. Mitchell of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellant/plaintiff.

Linda Hansen Robbins of Irvine & Robbins, Cedar Rapids, for appellee/defendant.

Considered by DONIELSON, C.J., and HABHAB and CADY, JJ., but decided en banc.

CADY, Judge.

This is an appeal from a modification of a prior decree for dissolution of marriage, consolidated with a writ of certiorari from a finding of contempt of court. On our review, we affirm the modification and grant the writ in part.

Douglas and Jo Ann were divorced in 1982 pursuant to a stipulated decree. Both parties worked for Rockwell International and had separate pension plans, which they received under the decree. Douglas was initially required to pay monthly alimony of $400. It was later increased to $500.

Douglas lost his job with Rockwell International in March 1988. He continued his monthly alimony payments until November 1988, when he notified the court he could no longer pay the alimony due to his continued unemployment. Douglas subsequently applied for and received his pension benefits of $718 per month.

In April 1992, after numerous unsuccessful attempts to collect the alimony payments from Douglas, Jo Ann filed an application to modify the dissolution decree. The application alleged Jo Ann was unable to support herself due to a medical condition, and that Douglas was more than $20,000 in arrears on his alimony obligation. She also alleged Douglas' pension benefits were exempt from execution and asked for the court to enter a qualified domestic relations order (QDRO) to enforce the payment of the monthly alimony. Additionally, she requested an increase in alimony.

Jo Ann also filed an application for Douglas to appear to show cause why he should not be found in contempt for failing to pay his alimony. A hearing on the application was set for June 11, 1993. Douglas, however, was not timely served with the application and order. He was residing in Phoenix, Arizona, and was not personally served with the application and order to appear until the day of the hearing.

On July 14, 1993, attorney James N. Affeldt filed an answer to the application for modification on behalf of Douglas. On October 26, 1993, the district court administrator issued a scheduling order setting the modification trial for January 6, 1994. The scheduling order listed the issues to be addressed at the trial, including an "Application for Rule to Show Cause." The trial notice was mailed by the clerk of court to counsel for the parties. No new show cause order was issued by the trial court.

On December 29, 1993, attorney Affeldt filed an application to withdraw as counsel for Douglas in the modification proceeding. The following day, the court granted the motion, but told attorney Affeldt that the withdrawal was contingent on Douglas not filing an application for continuance of the hearing. On the same day, Douglas filed a flurry of documents, including a consent to withdrawal of counsel, request for continuance of the modification trial, financial statement, affidavit in response to show cause order, application to appear in absentia at the modification trial, and application to proceed pro se.

The case came before the court on January 6, 1994. Jo Ann appeared with her attorney. Attorney Affeldt appeared. Douglas was not present. The court announced that both the modification and contempt applications would be heard. Attorney Affeldt informed the court he only represented Douglas on the

modification action and Douglas was never personally served with notice that the contempt hearing would be held at the same time as the modification hearing. The court overruled Douglas' request for a continuance and proceeded to hear both the modification and contempt applications. The trial court found the trial notice issued by the court administrator supplied sufficient notice to Douglas of the contempt hearing under the circumstances. The court noted Douglas had recently filed an affidavit in response to the rule to show cause. Jo Ann testified at the hearing, and the court took judicial notice of the documents filed by Douglas.

The trial court found Douglas willfully failed to make forty-two monthly alimony payments. He was sentenced to forty-two consecutive terms of ten days in the county jail. The trial court also found Douglas' failure to pay spousal support constituted a substantial change in circumstances to justify a modification of the parties' divorce decree. The court then modified the decree by entering a QDRO directing the administrator of Douglas' pension plan to pay $500 each month to Jo Ann to satisfy the present and future monthly alimony obligation.

Douglas appeals from the modification order and seeks certiorari from the contempt order. He claims pension benefits awarded under a dissolution decree may not be assigned in a subsequent modification proceeding. He also claims the contempt finding should be vacated because notice of the hearing was defective, there was insufficient evidence of contempt, and he was not represented by counsel. He also argues the trial court erred in sentencing him to forty-two separate jail terms.

## I. Modification.

█ It is a well-recognized principle that the property division of a dissolution decree is not subject to modification absent fraud, duress, coercion, mistake, or other similar grounds which would support modification of ordinary judgments. *In re Marriage of Johnson*, 299 N.W.2d 466, 468 (Iowa 1980). Thus, property awarded to one party in a divorce may not be changed in a modification action absent the predicate grounds.

*Id.* A decree for dissolution of marriage is otherwise subject to modification when supported by a substantial change in circumstances. *In re Marriage of Skiles*, 419 N.W.2d 586, 588 (Iowa App.1987). Douglas claims the post-decree assignment of his pension plan constituted an unlawful modification of the original property division. Jo Ann counters that the trial court's authority to modify alimony includes the authority to direct the manner of payment, including payment from a pension plan under a QDRO.

█ Jo Ann clearly styled her action as one to modify the original dissolution decree. However, the essence of her claim for relief, which was just as clear, was to establish a QDRO in response to Douglas' failure to pay alimony. In making the request, Jo Ann was not seeking to redistribute property previously awarded under the original decree, but was attempting to enforce the alimony provision of the prior decree through a garnishment or assignment. *See Baird v. Baird*, 843 S.W.2d 388, 392 (Mo.App.1992); *see also In re Marriage of Rife*, 529 N.W.2d 280, 280–81 (Iowa 1995) (holding corpus of retirement plan may be garnished to satisfy past-due alimony pursuant to QDRO entered after dissolution). Consequently, we believe the issuance of a QDRO following a final decree for dissolution of marriage does not constitute an unlawful modification of property awarded under the original decree. *Baird*, 843 S.W.2d at 391; *see Rohrbeck v. Rohrbeck*, 318 Md. 28, 566 A.2d 767, 774 (1989).

Notwithstanding, Douglas argues that the order entered by the district court in this case was insufficient to satisfy the anti-alienation clause of the federal statute governing private employee pension plans. We disagree.

█ The Employee Retirement Income Security Act of 1974, Pub.L. No. 93–406, 88 Stat. 829, (ERISA) was enacted by Congress to provide protection for participants and beneficiaries of employee pension plans in the private work place. One of the key components of the act was the spend-thrift provision, which prevents plan participants from assigning or alienating their plan benefits. In response to efforts by dependents

and former spouses to obtain benefits from plans to satisfy family support obligations, Congress created an exception to the spend-thrift provision by enacting the Retirement Equity Act of 1984, Pub.L. No. 98–397, 98 Stat. 1433 [hereinafter REA]. *Baird,* 843 S.W.2d at 391; *see also American Tel. & Tel. Co. v. Merry,* 592 F.2d 118, 121–25 (2nd Cir.1979). This Act amended ERISA to allow participants of a pension plan to alienate or assign benefits if done pursuant to a QDRO. REA, §§ 104, 204 (codified as amended at 29 U.S.C. § 1056(d), 26 U.S.C. § 401(a)(13), 414(p) (1988)). ERISA otherwise preempts efforts to alienate or assign benefits by domestic relations orders that do not qualify as a QDRO. *See Rohrbeck,* 566 A.2d at 770–71.

■ ERISA does not require a QDRO to be part of the actual judgment in a case. *Baird,* 843 S.W.2d at 392; *Rohrbeck,* 566 A.2d at 771. It does, however, define several requirements which must be met before an order will be considered to be a QDRO. The order must foremost be a domestic relations order, which is defined under the Act as any judgment, decree or order relating to child support or spousal support issued pursuant to state domestic relations law. 29 U.S.C. § 1056(d)(3)(B)(ii) (1988). It must then meet three additional requirements. First it must create or recognize an alternate payee's right to, or assign to an alternate payee the right to, receive all or a portion of the benefits payable to a participant under a plan. 29 U.S.C. § 1056(d)(3)(B)(i); 26 U.S.C. § 414(p)(1)(A). Second, it must specify:

(i) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order,

(ii) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage if to be determined,

(iii) the number of payments or period to which such order applies, and

(iv) each plan to which such order applies.

29 U.S.C. § 1056(d)(3)(C); 26 U.S.C. § 414(p)(2). Finally, it must not:

(i) require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan,

(ii) require the plan to provide increased benefits (determined on the basis of actuarial value), and

(iii) not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee under another order previously determined to be a qualified domestic relations order.

29 U.S.C. § 1056(d)(3)(D); 26 U.S.C. § 414(p)(3).

■ Douglas argues an additional mandate exists which requires the plan administrator to consent to the order before it can qualify as a QDRO. The Act does require each plan to establish procedures to determine the qualified status of domestic relations orders, and to ultimately determine the status, but the provisions are not a prerequisite to a QDRO. The administrator has up to eighteen months after receipt of an order to make this determination. *See* 29 U.S.C. § 1056(d)(3)(G)–(H); 26 U.S.C. § 414(p)(6)–(7). Upon review of the domestic relations order entered in this case, we conclude the requirements of the Act were satisfied.

Lastly, Douglas argues that the assignment of the pension benefits may conflict with the exemption laws of Arizona, Iowa, or California, the states where Douglas' pension plan is administered. Douglas cited no authority in support of this argument, which relieves us from any obligation to review it. *See Newman v. City of Indianola,* 232 N.W.2d 568, 574 (Iowa 1975).

■ We recognize the financial strain Douglas has visited upon Jo Ann as a result of his prolonged failure to satisfy his alimony obligation. In response to similar circumstances, our Supreme Court permitted a retirement plan to be garnished to satisfy past-due alimony based on a post-decree QDRO. *Rife,* 529 N.W.2d at 282. Likewise, we believe that benefits under a retirement plan may be assigned under the circumstances of this case. The anti-assignment provisions of ERISA are not impacted once a QDRO is in place, and we find no established prohibition

against an assignment under state law.[1] The question whether to permit the assignment rests with the particular facts of each case, and the equitable powers of the court in dissolution matters.

■ On our de novo review of the facts of this case, we believe the trial court correctly entered the assignment. Jo Ann is disabled and her disability payments are inadequate to meet her living expenses. Douglas has not made any alimony payments since November 1988. Jo Ann has been unable to successfully enforce the alimony award through garnishment or a wage assignment. The pension assignment is necessary to enforce the alimony provision of the decree, and to free Jo Ann from continued economic hardship.

## II. Contempt.

Douglas first argues the district court lacked jurisdiction to find him in contempt because he was never personally served with notice of the rescheduled show cause hearing. We disagree.

■ Once a contempt proceeding has been initiated by personal service of a rule to show cause, it is unnecessary to personally serve the alleged offender with a new show cause order in the event the initial hearing is continued or rescheduled. *See Sharkey v. Iowa Dist. Court,* 461 N.W.2d 320, 323 (Iowa 1990). The court acquires jurisdiction over the person at the time of the original service, and is only required thereafter to give the alleged offender reasonable notice and opportunity to be heard. *Id.*

■ We recognize that the failure to carry out the original service of process in the prescribed manner may invalidate the service and deprive the court of its jurisdiction. *See Dennis v. Christianson,* 482 N.W.2d 448, 450–51 (Iowa 1992). Douglas, however, never argued that personal jurisdiction was not acquired because the original show cause order and application were not served on him within the time prescribed by the court. Any defects in the original service of process were waived by responding to the summons.

*See Crouch v. National Live Stock Remedy Co.,* 205 Iowa 51, 53, 217 N.W. 557, 559, (Iowa 1928). The fighting question is whether Douglas was given adequate notice of the rescheduled hearing date.

■ Notice of the rescheduled hearing was given by the court administrator to the attorney representing Douglas in the consolidated modification proceeding. The attorney did not file an appearance for Douglas in the contempt proceeding and did not hold himself out as representing him in the contempt action. Without some express authorization by Douglas, the notice served on his attorney in the modification action could not constitute reasonable notice of the show cause hearing. *See Sharkey,* 461 N.W.2d at 323.

■ Notwithstanding, we find sufficient evidence in the record to show that Douglas had actual notice the contempt hearing was scheduled at the same time as the modification hearing. The documents filed by Douglas prior to the hearing confirm this knowledge. The motion for continuance filed by Douglas shows he knew the "trial" was scheduled for January 6, 1994 pursuant to an "order". This scheduling order issued by the court administrator specified that the application to show cause would be considered on January 6, 1994, and directed the parties to file financial statements prior to the hearing. Douglas filed a financial affidavit as directed, as well as a detailed written response to the show cause order. In his written response, Douglas denied "the allegations that [the] failure to pay [alimony] was willful." He also denied the other allegations "stated in the rule to show cause and order to appear." Douglas' motion for continuance specifically indicated he filed the financial statement "in response to [the scheduling] order." We believe Douglas received reasonable notice and opportunity to be heard under the circumstances.

Douglas also claimed the sentence must be vacated because he was not represented by counsel. He believes the trial court should have appointed counsel to represent him in

---

1. We emphasize that we decline to address Douglas' claim that pension benefits are protect- ed from an assignment under state laws enumerating property which is exempt from execution.

the hearing since he faced imprisonment if found in contempt.

 An indigent cited for contempt is entitled to be represented by counsel at the contempt hearing if there is a significant likelihood that the sentence will include incarceration if the indigent is found in contempt. *McNabb v. Osmundson,* 315 N.W.2d 9, 14 (Iowa 1982). In this case, however, Douglas did not request court-appointed counsel. Instead, he requested to proceed pro se. Moreover, there was no showing he was indigent. His financial statement filed prior to the hearing indicated his monthly income exceeded his monthly expenses. His ability to employ an attorney to represent him in the contempt proceedings was also apparent from his employment of an attorney in the companion modification proceeding. Under the circumstances, we conclude the trial court was not required to appoint counsel to represent Douglas at the contempt hearing.

We also find substantial evidence to support the finding of contempt made by the trial court. *See Ervin v. Iowa Dist. Court,* 495 N.W.2d 742, 744 (Iowa 1993). The evidence showed Douglas is an articulate and talented individual, and that his earning capacity exceeds his earnings. The evidence also showed Douglas totally ignored his monthly alimony obligation, despite being employed during the period of time he was found in contempt. His failure to make even partial payment of his support obligation supported the trial court's determination that his noncompliance with the decree was willful beyond a reasonable doubt.

Douglas next challenges the forty-two separate terms of incarceration imposed by the trial court. Separate contempts involving a dissolution decree or order may be punished in a single proceeding and each "offense" may be punished separately. *Johnson v. Iowa Dist. Court,* 385 N.W.2d 562, 564 (Iowa 1986). Separate acts of contempt, however, must be alleged in the contempt application. *Id.* This requirement is rooted in the quasi-criminal nature of the proceedings. *Id.* Reasonable notice requires separate charges of contempt be made much like separate criminal charges, alleged separately in a trial information or indictment. *Id.* (quoting *Ex parte McNemee,* 605 S.W.2d 353, 357 (Tex.Civ.App.1980).)

In this case, Jo Ann's application for order to show cause did not adequately identify separate acts of contempt to support separate punishment. The application simply alleged Douglas was obligated to pay monthly alimony of $500 and was more than $20,000 in arrears. The application only requested that Douglas "be held in contempt." Douglas did not receive clear notice of multiple accusations.

Accordingly, we grant the writ of certiorari to the extent that the order of the district court imposed a term of incarceration in excess of thirty days. *See* Iowa Code § 598.23(1) (1993). We, otherwise, annul the writ. We remand to the district court for further consideration of the punishment and entry of a new order.

**AFFIRMED ON APPEAL. WRIT ANNULLED IN PART, GRANTED IN PART, AND REMANDED.**