Hugh Burris, Appellee, v. F. C. Titzell, Appellant.

NEGLIGENCE: Specification of Acts—Pleading. Pleadings reviewed, and, though somewhat indefinite, held to charge that defendant, knowing that a surgical drainage tube was loose, and liable to slip into plaintiff's body, negligently failed to again fasten said tube to plaintiff's body.

EVIDENCE: Duty of Nurse. One who is familiar with the duties of a nurse in a hospital is competent to say what those duties are.

PHYSICIANS AND SURGEONS: Responsibility for Negligence of Nurse. A physician may not be held responsible for the negligence of a nurse over whom he has no control.

NEGLIGENCE: Inapplicable Instructions. Instructions relative to the responsibility of a physician for negligently allowing a nurse to dress a wound, *without any allegation of negligence on the part of the physician,* constitute prejudicial error.

PHYSICIANS AND SURGEONS: Improper Operation from Nonexpert Testimony. An operation on the human body by a surgeon may be so grossly in excess of what was reasonably necessary that a jury may find such fact, without the aid of

expert testimony that such operation was improper. So held on the issue whether a surgeon unreasonably operated through the patient's back, in order to remove an obstruction near the right nipple.

EVIDENCE: Competency—Subsequent Condition as Proving Prior .6   Condition. Evidence that a patient was able at a certain time to take an anæsthetic is not competent on the issue whether he was able to take an anæsthetic at a time a year prior thereto.

*Appeal from Johnson District Court.*—R.  G.  POPHAM, Judge.

MAY 15, 1920.

SUPPLEMENTAL OPINION ON REHEARING, NOVEMBER 23, 1920

ACTION to recover damages for malpractice.  Opinion states the facts.  Judgment and verdict for the plaintiff. Defendant appeals.—*Reversed.*

*Dutcher, Davis & Hambrecht,* for appellant.

*W. J. McDonald* and *Cook & Balluff,* for appellee.

GAYNOR, J.—This action is to recover damages for alleged malpractice.  The plaintiff divides his petition into two counts.  In each count, he undertakes to set out a distinct cause of action, upon which he

1. NEGLIGENCE: specification of acts: pleading.

predicates a right to damages.

The first count centers around the escape of a drainage tube into the pleural cavity of the plaintiff on the 6th day of March, 1915.  It is the claim of the plaintiff that the defendant was negligent in permitting the drainage tube to escape into the said cavity.  The second count centers around an operation performed in an attempt to remove the tube.  Before stating the grounds upon which plaintiff predicates his right to recover, we

may properly state some of the facts which led up to and made it necessary that the plaintiff be operated upon at all. It appears that, on and prior to the 6th day of January, 1915, plaintiff was a resident of Cherokee County, and while there, was taken sick with pleurisy and pneumonia, some time in January, 1915, and was treated by a local doctor for these troubles until the 20th day of February, 1915, when he was brought to the Homeopathic Hospital at Iowa City. The local doctor testifies that, before plaintiff was taken to Iowa City, he performed a surgical operation on the plaintiff with an aspirating needle. The purpose was to relieve the pus in the pleural cavity. He testified:

"I secured one quart of pus from the pleural cavity. This operation was performed on the 19th day of February. The ailment with which plaintiff was suffering was a serious disease. It is difficult to treat, and more so with a history of alcohol, booze, back of it,—it is very hard. After I found out there was pus in this cavity, and it would be a long-protracted case, I concluded to send the plaintiff to Iowa City."

He was accordingly taken there on the date aforesaid. The plaintiff was brought to this hospital as a county patient, by one of the trustees of the township in Cherokee County in which he resided. The defendant occupied the chair of surgery in the State University, and plaintiff was turned over to him for treatment. The defendant's connection with this Homeopathic Medical College at Iowa City consisted of teaching, and also doing general surgery, such as was found necessary in the hospital. We take it that he was employed by the state at a fixed salary, and received no compensation for the treatment given patients in the hospital, other than he received from the state. The nurses and medical staff of this hospital were employed by the board of education of the state, and were subject to discharge by them. The defendant's relationship to the hospital gave him no authority to employ or discharge internes or nurses. The nurses were assigned to take care of patients operated upon. The defendant attended the plain-

tiff for the first time on February 22, 1915; or, at least, that is the first time he saw him. He diagnosed his case, and found him suffering from empyema; found him in a badly run-down condition, as a result of his previous illness. On the 24th, the doctor inserted a needle in the chest of plaintiff, for the purpose of ascertaining whether he had pus, or just an ordinary effusion. He found pus in the cavity, and that it was necessary to remove it, in order to effect a cure. Thereupon, the doctor made an incision about two inches long into the cavity, between the seventh and eighth ribs, and inserted a tube, for the purpose of draining the pus from the cavity. The tube, after being inserted, was fastened in the body of the patient by suture: that is, a needle threaded with silkworm gut was passed through the skin and through the tube, and then out through the skin on the other side, and tied. All doctors agree that this was one of the usual and approved methods of inserting and fastening such a tube, at the time the operation was performed. Thereafter, the doctor saw the patient twice a day. In the meantime, it was the practice of the hospital and the duty of the nurses and internes to dress the wound; and this was done. On the 6th day of March, it was discovered by one of the nurses that the tube had disappeared. A search was made for it in the bed and clothing, and in the dressing that had been removed from the wound, and it could not be found.

On the 22d day of June following, it seemed that the wound had closed, so that there was not sufficient drainage, and plaintiff's temperature was rising. An effort was made then to enlarge the opening for better drainage, and an attempt made to administer an anæsthetic; but the patient was unable to take the anæsthetic, his heart stopped, he quit breathing, and the attendant had to use artificial respiration to bring him back; and further operation was suspended,—at least the defendant so claimed.

The escape of the tube from its moorings into the pleural cavity, and the consequences that followed its presence there, serve as a basis for the cause of action alleged by

the plaintiff in the first count of his petition. In stating his cause of action in this count, he says:

"The defendant, in *placing* or *inserting* said drainage tube, undertook to secure the same; so as to prevent it from slipping or sliding into the cavity, by making a stitch with a needle, which the plaintiff believes to have been a silk thread through said tube and the flesh or skin of the plaintiff; that the defendant, not regarding his duty to the plaintiff, so *carelessly, negligently,* and *unskillfully* placed the tube in plaintiff's person, and so negligently failed to properly and safely secure it against slipping, falling, or working into the pleural cavity, that the tube did escape or work loose from the insecure fastenings, and did slip or work into the person of plaintiff and into the pleural cavity, and remained there until the same was removed, on the 1st day of January, 1916."

The negligence upon which plaintiff predicates his right to recover in this count is stated in these words:

"1st. That the defendant failed and neglected to use reasonable and proper means of *securing* said drainage tube to the person of plaintiff, or otherwise, so as to prevent same from slipping or working into the cavity in which it was inserted for drainage purposes.

"2d. That he failed to *secure* or *fasten* the tube, to prevent it from slipping or working into the cavity.

"3d. That, knowing the tendency of the tube to slip or work into the cavity, he failed and neglected to take any means whatsoever to *prevent* the same from working or slipping into the cavity.

"4th. That he failed to use any of the means known to the profession generally to *prevent* the tube from slipping or working into the cavity."

He alleges that, by reason of this negligence, the tube slipped or worked into the cavity, producing injurious consequences, both in health and loss of time, etc., and expenses incurred. On the allegations of this count, he clams $15,000.

The second count of the petition is predicated on the

alleged negligence of the defendant in *attempting to* remove the tube from plaintiff's person on the 1st day of January, 1916; and it is alleged that, on that day, defendant, for the purpose of recovering or removing the tube, performed a surgical operation upon the plaintiff. The negligence charged in this operation is:

(1) That the defendant negligently and carelessly failed to locate, by means of an X-ray, or otherwise, the exact and precise location of the tube in the person of the plaintiff before attempting the operation.

(2) That the defendant, knowing or having means of knowing the location of said drainage tube in the person of the plaintiff, proceeded to operate upon the plaintiff, without locating or having located the said tube in the person of the plaintiff.

(3) That the defendant was negligent in making a cut or incision in the plaintiff's back, and through the nerves, muscles, and flesh of his back, when he knew, or should have known, by the exercise of reasonable care, the extent and size of the cavity into which the aforesaid drainage tube had escaped, and was then located; and was negligent in not ascertaining and knowing that the cavity did not extend around plaintiff's right side and into his back; that defendant was negligent in making a cut or incision into plaintiff's back, and in severing the nerves, muscles, and cords leading to his right arm, which are involved in the motion of his right arm, when he knew, or should have known, that the drainage tube which he was seeking to recover was located at or about and under the right nipple, and that the cavity did not extend into the right side or back of the plaintiff, beyond a point drawn directly downward from the shoulder blade of the plaintiff on the right side; that, in the operation, the defendant did not locate the drainage tube.

For the consequences that flowed from this alleged negligence, the plaintiff claims $30,000 damages.

It will be noticed that the plaintiff claims to recover for two distinct acts of negligence, one occurring in February,

1915, and the other on January 1, 1916. Each act complained of as negligence serves in the pleading as a basis for a separate cause of action, and the right to recover on either cause of action rests upon the proof offered to establish it. The court submitted each count as separate and distinct causes of action, on which damages could be predicated, if the facts alleged therein had support in the evidence.

Analyzing the first count, for the purpose of ascertaining what the basic facts are, as therein alleged, upon which plaintiff seeks to recover, we find it charged, as a basis for recovery, simply that the defendant negligently, carelessly, and unskillfully inserted the tube, in such a way and with such fastenings that, as a result of the negligence of the defendant in fastening the same, it escaped into the pleural cavity of the plaintiff, and caused him serious injury. It is not claimed that the insertion of the tube was not necessary, or that it was not a proper method to be employed in treating the trouble from which plaintiff was then suffering. The claim is that the treatment, though necessary and proper to be done, was done in an unskillful way; not that the incision was not proper and necessary; not that it was not made at the proper place; not that the tube was an improper tube to insert; not that it was not inserted at the proper place; but simply that the defendant failed to exercise reasonable care to secure it. It is said that the defendant carelessly, negligently, and unskillfully failed to properly and safely secure it against slipping or falling into the cavity, and that the fact that it did slip loose and escape into the body of the plaintiff was due to the negligent manner in which the defendant had secured it. Damages to the person of the plaintiff, it is claimed, followed from its slipping in. The question for the court and the jury was whether or not the defendant was negligent in not securing it to the person of plaintiff so as to avoid its slipping in. This is the basic fact in the first count, which, if proved, might justify recovery. It must be shown, therefore, that the defendant was, in fact, negligent in the man-

ner in which he secured this tube, after he had inserted it, and that his failure to fasten it was the proximate cause of its slipping in, and of the injuries consequent thereupon. It requires no argument to demonstrate that, unless the substantive negligence upon which this cause of action in the first count rests, is proven, the defendant is not answerable for the consequences that follow the slipping of the tube into the pleural cavity. In this count, plaintiff seeks to make the defendant liable for all consequences that follow that act. Among these, he alleges that it became necessary subsequently to perform an operation to remove the tube, and that this operation was not only painful, but very injurious to the plaintiff, and caused him sickness and damage. The subsequent operation could only be considered in determining the *damages* which the plaintiff is entitled to recover on account of the substantive negligence charged; and it must affirmatively appear that the defendant was guilty of that negligence, before he can be charged with the consequences that follow the act charged to be negligent. It will be borne in mind, in considering this first count, that the operation was necessary and proper, in an effort to bring about a cure of the troubles under which the plaintiff was laboring. It will be borne in mind that no complaint is made of the fact that this defendant performed this operation to remove the pus from the pleural cavity. There is no complaint as to the character of the operation, or the manner in which the operation was performed. There is no complaint made of the method employed by the defendant to bring about the results sought to be attained by the operation. The incision was made, so far as this record shows, just where it should have been made; the tube employed was just such a tube as should have been used; it was inserted in a wound made at the proper place, and for the proper purposes; and the thread used to fasten it was such thread as is proper to be used in an operation of that kind. The plaintiff charges it to be a silk thread, which might easily have been absorbed; but the proof shows that a thread was used that would not

easily absorb, rot, or give way. The evidence shows that the thread was fastened by the use of a needle, to the body of the plaintiff, and that this was the usual way and a proper way. The only evidence we have that tends in any way to negative this is that it did not remain where it was fastened, but did escape into the body of the plaintiff. This escape, however, did not occur until some ten days after the operation. In the meantime, the wound made by the incision was dressed by nurses, over whom the defendant had no control, who were furnished by the hospital to care for patients placed there and operated upon; and these wounds were dressed at intervals by these nurses. It appears that, some time after the operation, the stitches made in sewing the wound were removed; but the evidence shows, and the plaintiff testifies, that the stitches were taken out of the incision seven or eight days after the operation. The stitches that held the tube were not taken out. However that may be, there is no direct evidence that the stitches or thread placed there to hold the tube in place, ever came loose; that they were ever discovered to be loose by anyone, before the tube itself was found to have escaped. How it escaped is not shown. To lay a foundation for liability under the issue tendered, it must affirmatively appear, and there must be evidence in the record, that would justify the jury in saying that the escape was due to the negligent manner in which it was fastened to the body at the time of the operation. If it be thought that it was the duty of the defendant, after the operation, to watch and see that the stitches did not become loose, or loosen, it should have been so alleged; but it is not so charged upon him as a duty, and no negligence is predicated on this thought in the petition. The charge of negligence is bottomed only on the manner or sufficiency of the fastenings. The doctor saw the patient about twice a day, after the operation. In the meantime, plaintiff was in the hands of the nurses placed there to care for him by the hospital authorities. It does not appear that the dressing of the wound was had in the presence of the doctor, or that these nurses were not skilled in doing the

work which they were required to do in the dressing of the
wound. The patient sustained a somewhat different rela-
tionship to this doctor, so far as nurses were concerned,
than he would sustain if he were a private patient under
the charge of the doctor and of nurses selected and placed
in charge by the doctor.

However that may be, the defendant undertook to show
that it was the duty of the nurses to see that the tube
was in, and that the stitches were in place, at the time
they dressed the wound, and this question
was asked:·

2. EVIDENCE:
duty of
nurse.

"You stated to counsel on the other side,
on cross-examination, that it was a part of
your duty to see that the tube was in, and that the stitches
were in place there, at the time you dressed the wound?
A. Yes. Q. That is a part of the duty of the nurses at
the hospital, and was at the time, is that true? · (Objection
sustained.)"

It appears that more than one nurse had charge of this
plaintiff after the operation, and more than one nurse in
the hospital dressed his wound, and it appears that other
nurses were on duty before this nurse went on duty. This
is a pertinent inquiry. One who is familiar with the duties
of a nurse in a hospital is competent to say what those
duties are. This witness was shown to be qualified to
testify, and there was error in the court in not permitting
her to answer this question. It is not sufficient to say that
she was asked to state her opinion as to the duty of others
in respect to the matter inquired about. It was a substan-
tive fact, which could be known by experience and observa-
tion, and testified to by one who, having experience and
observation, was capable of giving the jury information as
to the fact. It was important because of the fact that it
was put before the jury to say, if the matter ultimately
came to the jury, whose duty it was to look after these
tubes, and to see that the stitches were in place there when
the wound was dressed, and that they were not interfered
with in the dressing.

The theory of the plaintiff rests on the assumption that the tube became loose and slipped into the body through the negligence of the defendant in the manner of the fast-

3. PHYSICIANS AND SUR-GEONS: responsibility for negligence of nurse.

ening. If it was the duty of these nurses, over whom defendant had no control, in his absence to see at all times that the tube was in, and that the stitches were in place when the wound was dressed, a failure to exercise that duty, or a dressing of the wound when stitches were loose from any cause whatsoever, might be substantive negligence on the part of the nurse. The court, in its ninth instruction, said to the jury on this point:

"The evidence in this case discloses the fact that the wounds in plaintiff's right side which were caused by the operations in question were sometimes dressed by nurses and internes of the Homeopathic College of Medicine of the State University of Iowa. You are instructed that, unless you find that the defendant was negligent in permitting said nurses and internes to dress said wounds, taking into account all of the evidence, facts, and circumstances in the case, he is not responsible for their acts, except in so far as his duty exacted proper treatment of the plaintiff by them."

The inference which the jury could well draw from this instruction is that they were justified in finding actionable negligence on the part of the defendant in permitting the nurses to dress the wound, and that he is responsible for their acts in dressing the wound, if he permitted them to dress it. The jury might well find that the defendant properly fastened the tube, and was guilty of no negligence in the manner in which he fastened it, but that the internes or nurses, whose duty it was to dress the wounds, were negligent and careless in the dressing, and because of this, the tube became loosened from its moorings and slipped into the body.

The petition charges no negligence against this defendant in permitting the nurses and internes to dress the

wound.  It is not charged that he was negligent in permit-
ting the nurses and internes to dress the

·4.  NEGLIGENCE:   wound.  He is not charged with any negli-
   inapplicable
   instructions.    gence of these nurses in dressing the wound.
It is left to the jury to assume that defend-
ant's duty might exact of him proper treatment by these
nurses, and that any improper treatment by them would
create a liability on the part of the defendant, if it resulted
in injury to the plaintiff, such as is charged.  No basis is
laid in the pleadings for this instruction, and no basis is
laid in the pleading that would justify the jury in charging
the defendant with negligence in permitting the nurses and
internes to dress the wound, or for their negligence in the
manner of dressing.  We think the court erred in giving
this instruction.  It is hornbook law that the negligence
charged is the only negligence which a jury can consider,
in determining the liability of the party. charged; and, even
though other acts of negligence are proven, they do not lay
a basis for recovery, unless charged as a basis for recovery.
To hold the defendant liable upon this first count, we must
enter the field of speculation with no proof of any substan-
tial fact involving him in negligence.  We are satisfied that
the court erred in the manner of submitting this first count
to the jury.

Some evidence was introduced on the trial tending to
show that, in June and July following the discovery of the
fact that the tube was missing, and was in the body of the
plaintiff, the defendant undertook to operate upon the
plaintiff, for the purpose of removing the tube, and that
these operations were unsuccessful, and were undoubtedly
attended by considerable pain.  No negligence is predicated
on any act of the defendant's in connection with these opera-
tions.  The defendant asked the court to instruct the jury
that there is no claim on the part of the plaintiff of any
negligence on the part of the defendant in either the June
or the July operation; and this the court refused to give.
We think this, too, was error.  The jury should have been
confined to the charge made.  There was no charge of negli-

gence touching the conduct of the defendant at the June and July operations. The jury should have been affirmatively told that they could not predicate any liability upon any act done by the defendant at that time, and in that effort to remove the tube.

We are satisfied that plaintiff has not made a case under this first count.

This brings us to a consideration of the second count, and the errors relied upon for reversal in the matter of the submission of this count to the jury. We might say here that the evidence took a wider range than is justified by the issues presented.

The substance of the second count has been hereinbefore set out. The court, in its instructions to the jury, took from the jury the claim that the defendant was negligent in failing to locate the tube in the pleural cavity before beginning the operation charged to have been undertaken by him on the 1st day of January. It refused to take away the second ground of negligence alleged. When the court took away the first ground of negligence, it impliedly assumed that there was no negligence on the part of defendant in failing to locate the tube before beginning the operation. It impliedly said to the jury that the defendant did know the location of the tube before commencing the operation. The fact is that an X-ray was taken in December preceding the operation, and this X-ray picture showed the tube and its location. This is not disputed; yet the court submitted to the jury the second ground of negligence: that is, that the defendant proceeded to operate upon the plaintiff without locating or having located the tube in the person of the plaintiff. Why the court should have taken away this first ground of negligence and have submitted the second ground of negligence is not made plain in this record. The first ground of negligence was withdrawn clearly on the ground that the defendant did know the precise location of the tube in the person of the plaintiff before attempting the operation. Why, then, leave it to the jury to say that he did not know, or to find that he did not know? Yet this

is the situation here. It was left to the jury as a ground of negligence that the defendant failed to locate the tube before beginning the operation. This was error, and prejudicial error. It left it to the jury to say that this charge of negligence served as a basis for the finding of negligence, when the court, following the evidence, had already told the jury that it would not serve as a basis for that purpose.

It is claimed that the manner of the operation was not shown to be negligent. Plaintiff called no expert witnesses to testify to whether the manner of operation of this last operation was approved by the medical profession or not. It is the contention of the defendant that, in the absence of expert witnesses, the jury was turned loose to speculate upon a scientific question, without the knowledge essential to a proper solution of it. It is true that, in many cases, a proper determination of the controversy requires that laymen be informed, by those expert in the matter, as to what is correct or incorrect practice. It is true that, in matters of science, and in other matters of which laymen can have no knowledge, opinions of experts are essential to a correct conclusion by the jury on the disputed matters. Some cases hold that the testimony of experts is conclusive upon the jury. See *Moratzky v. Wirth,* 74 Minn. 146 (76 N. W. 1032). But cases do arise where physical facts and the natural laws that govern physical life are so well known that a jury, from the facts before it, is able to determine, and correctly, whether the treatment was proper or not. As bearing upon this question, see the late case of *Moehlenbrock v. Parke, Davis & Co.,* (Minn.) 176 N. W. 169. We think the instant case comes within the exception to the rule requiring expert testimony.

5. PHYSICIANS AND SURGEONS: improper operation from non-expert testimony.

Assuming, now, that the defendant had the X-ray before him, knew exactly where this tube was located in the body of the plaintiff, and, in an effort to remove it, cut the body of the plaintiff at such point as would clearly suggest to the mind of the ordinary layman that the wound inflicted

was grossly in excess of what was reasonably necessary to reach the point where the tube was located, the jury might well find the defendant guilty of negligence. We will not enter into a discussion of this branch of the case at this time, since the case must be retried, but simply say that we think this is a case where liability may rest and be shown without the testimony of expert witnesses.

The plaintiff has assigned 26 errors. Many of these are well taken, but will not occur upon the trial again, undoubtedly. Many are captious and without merit.

Why either party introduced evidence touching the operations in June and July, we are not able to discover in this record, except only as tending to show the amount of damage which the plaintiff sustained by

**6. EVIDENCE: competency: subsequent condition as proving prior condition.** reason of the original wrong charged against the defendant in the first count. It certainly furnished no basis for liability.

The evidence touching these operations in June and July shows that they were unsuccessful. Defendant claimed that this was so because of the physical condition of the plaintiff at that time; that he was unable to take an anæsthetic. The operations were not denied. The suffering incident to the operations was not denied. That the effort was made to remove the tube by these operations was not denied. That these operations were reasonably made necessary by the presence of the tube in the body was not denied. If the tube in the body was there through the negligence of the defendant, that evidence would be competent; but if the tube was not there through the negligence of the defendant, it was wholly immaterial, and certainly was irrelevant, for want of an issue on that point. Yet, the plaintiff, for the purpose of negativing, we take it, the claim of the defendant that the plaintiff was not able to take an anæsthetic, introduced evidence that, in July, a year later, the tube was removed by one Dr. Littig, and that, at that time, the plaintiff was able to and did submit to an anæsthetic, without suffering any ill effects therefrom.

It is a general rule that a condition shown to exist is

presumed to continue until negatived, but this rule applies only to permanent and continuing conditions. The fact that the wind blows from the east today is not evidence that it was blowing from the east on the same day of the week previous. Conditions had changed in the meantime, and the evidence did not tend to negative the claim of the defendant that, a year preceding the operation by Littig, the plaintiff was not in a condition to take an anæsthetic, or to submit to a proper operation to have the tube removed. We say this in view of a new trial.

The law that governs the rights of the parties in this suit is too well settled to require a review at this time. For the errors pointed out, the case is—*Reversed.*

WEAVER, C. J., LADD and STEVENS, JJ., concur.

## Supplemental Opinion.

PER CURIAM.—Plaintiff and defendant have each filed a petition for rehearing. Upon a careful reconsideration of the record, we reach the conclusion that the issues tendered in the first count of plaintiff's petition should have been submitted to the jury. In our former opinion, we reached the conclusion that the allegations of Count 1 of plaintiff's petition went no further than to charge negligence in the method of securing the attachment of the rubber tube to the body of plaintiff, at the time the first operation was performed. Evidence was introduced from which the jury might have found that, notwithstanding the fact that the tube may have been properly secured in the first instance, the defendant later knew that it had broken loose, and that he failed to again secure it. The allegations of this count of plaintiff's petition are not as clear and explicit as they might well have been made, but we think them sufficient to charge the defendant with negligence in failing and neglecting to again securely attach the tube to plaintiff's body, after he discovered that it was loose. The con-

7. NEGLIGENCE:
specification
of acts:
pleading.

struction heretofore put upon the pleading is somewhat narrow and technical. In so far, therefore, as we held in our former opinion that the plaintiff was not entitled to have the issues joined upon the first count of his petition submitted to the jury, the opinion is modified and disapproved, and plaintiff's petition is sustained upon this point, and this issue will be for submission to the jury; otherwise, the petition for rehearing is overruled. Defendant's petition for rehearing is overruled.