RECTOR CARL NELSON, appellant, v. GERTRUDE LANGSTROM et al.,
appellees.

## No. 50227.

(Reported in 108 N.W.2d 58)

MARCH 7, 1961.

REHEARING DENIED MAY 2, 1961.

Ross, Johnson, Northrop, Stuart & Tinley, of Council Bluffs, for appellant.

Smith, Peterson, Beckman & Willson, of Council Bluffs, for appellees.

THORNTON, J.—Plaintiff brought this action to recover for injuries received in diving in a swimming pool, known by the trade name Crystal Pool, in Council Bluffs, Iowa. The pool and premises are owned by one defendant and operated by the other under the trade name. On the trial the jury returned a verdict for defendants. Plaintiff appeals.

The pool is 180 feet east and west and 75 feet north and south. The west 50 feet is the deep end and is marked off from the shallow end by a rope running across the pool. Attached to the rope are two barrels 25 feet apart and the same distance from the sides of the pool. Signs were painted on the barrels warning that the water is nine feet deep west of the rope. These

were the only signs or warnings of the depth of the water displayed at any place on or near the pool. In the east 130 feet of the pool the water varied in depth from 3' 6⅝" at the east end to 4' 11" at the 130-foot point. In the west 50 feet, important here, there is a "diving pit" where the water is at least 8' 9" deep. The diving pit is 39 feet north and south, or the crossway of the pool, and 22 feet east and west, and is surrounded by shallow water. From the point where the water on the north is 8' 9" to the north edge of the pool is a distance of 18 feet. In this 18 feet the depth of the water changes from 3' 5½" at the north edge of the pool to 3' 11¼" nine feet from the north edge, and changes in depth in the next nine feet from 3' 11¼" to 8' 9¹⁵⁄₁₆". At the west end of the pool is a diving stand with both a low and high diving board. The stand extends 11 feet into the pool from the west edge and the diving boards extend to the edge of the diving pit. On each side of the west end of the pool there is a lifeguard stand. They are located about halfway between the nine-foot rope and the west edge. The lifeguard stand on the north is 21 feet west of the rope.

On August 16, 1958, plaintiff, a man 47 years old and six feet one inch tall, made his first visit to Crystal Pool. He was accompanied by his two daughters, ages six and eight at the time. They entered the premises, plaintiff paid the admission for the three of them, and the girls, already in their swim suits, entered the shallow east end of the pool. Plaintiff changed to his swim suit in the bathhouse on the north side of the pool. He walked from the bathhouse, along the north side of the pool, toward the west end. He testified there were between 50 and 80 people scattered fairly evenly throughout the pool. People were in the west end diving and swimming. He saw the two diving boards at the west end of the pool. People were diving into the pool from the edge of the pool. Plaintiff walked to within six or seven feet east of the lifeguard stand on the north side and dove into the pool. He testifies he hit his head on the bottom in this dive and received the injury for which he seeks recovery. Plaintiff and his girls left the pool within 45 minutes. He was sick at his stomach. He worked for two weeks and then visited the doctor. He was hospitalized. After he was released from the

hospital he notified the defendants of his injury. The date of his notifying defendants was September 24, 1958. Further evidence will be set out in discussing the errors assigned.

Plaintiff urges four errors for reversal. Two relate to the admission of evidence, one to the failure to properly instruct, and the last to the failure to submit a pleaded specification of negligence.

I. Plaintiff's first complaint is the hypothetical question asked one of the lifeguards by defendants assumed facts not in evidence. This requires an examination of the evidence of the dive made by plaintiff. The question asked is, in pertinent part, "* * * what would be the effect of a person diving into the water who made a *half twist* as they dove into the water?" The answer was, "* * * he would more than likely turn and come back toward the direction from which he went into the water."

Plaintiff testified on direct examination, "I * * * dove in kind of a side dive. * * *."

On cross-examination, he said, "I dove toward the diving board. I was diving at an angle to the pool. * * * I dove with a side twist. * * * I made a regular dive, * * * I came up * * * at about the point where I dove in. I don't remember which way I was turned when I came up. * * * I don't necessarily say that I dove straight down, no, sir, I did go down and out, otherwise I couldn't [get] five or six feet away.

"Q. And you twisted too, didn't you, as you went down? A. Yes sir, I made a half turn. I dove pretty straight. I wasn't making a shallow dive. I was going to swim under water towards the board. I dove down and out. I made a half turn in diving."

Plaintiff's contention is the hypothetical question referred to a half twist, a dive requiring particular skill and which cannot be made from the position of plaintiff's dive. And that even though the words "twist" and "turn" are used interchangeably by plaintiff there is no evidence he was making a half twist.

There is no evidence a half twist cannot be made from the position of plaintiff's dive. We do find in Webster's New International Dictionary, Second Ed., unabridged, 1961, under the definition of "twist" as a noun the following:

"12. Fancy Diving. Any front or back dive in which the diver, beginning usually at the highest point of the dive, executes, in corkscrew fashion but without bending the body, a half turn (half twist) or a complete turn (full twist), the turn being accomplished by twisting the shoulders sideways so that the body follows the movement."

We cannot say the dive as described by plaintiff (his is the only testimony on the question) is outside of the definition. Webster, supra, states "turn" and "twist" are synonyms. The witness apparently so used them. It is true his testimony is subject to the interpretation, he dove straight out toward the diving board. But the hypothetical question is proper if the facts assumed are such as the jury would have a right to find the facts to be. In re Estate of Telsrow, 237 Iowa 672, 682, 22 N.W.2d 792, 799; Wigmore's Code of Evidence, rule 100, article 3, paragraph (e), section 766; and 32 C. J. S., Evidence, section 551, pages 348, 349. Clearly the jury could find from plaintiff's testimony he twisted or turned his body sideways as he dove.

II. Over objection of plaintiff each defendant was allowed to testify no previous accidents through diving had come to their knowledge during the time of their ownership and operation of the swimming pool. Plaintiff contends where, as here, there is no issue of knowledge of the occupier of premises, evidence of the absence of other accidents is inadmissible. We believe the plaintiff is mistaken when he claims there is no issue of the knowledge of defendants. It is true the defendants were aware of the size and construction of the pool. They knew this from the time it was built in 1931. Also they knew the depth of the pool and the parts of the pool that were safe for diving because of depth. They knew the water along the north side of the west end of the pool was 3' 5½" deep, and the depth increased to only 3' 11¼" in nine feet toward the center of the pool. However, it was their contention that the depth of the pool was visible to anyone and that the water was clear. Plaintiff testified at the place he dove in the water appeared to be deep enough for the dive he made. One defendant, and two lifeguards testifying for defendants, testified the water was

clear and a person standing on the north edge of the pool could judge the depth of the water. The clearness of the water and whether or not a patron of the swimming pool in the exercise of reasonable care could determine the depth of the water were important issues in this case.

█ Defendants owed the duty to exercise reasonable care to have their premises reasonably safe for invitees, if it is not they had the duty to remedy the defect or danger, or to warn the invitee who in the exercise of reasonable care does not know of the defect or danger. Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 275, 106 N.W.2d 579, 582, and citations. Defendants had the duty to exercise reasonable care to know their own premises. Their liability, if any, is based on superior knowledge, either actual or as should have been obtained in the exercise of reasonable care. The danger or defect, if there is one in this action, is the fact the water was less than four feet deep at the place of plaintiff's dive and such was unknown to plaintiff. Defendants knew the depth, but the evidence tended to show they did not know the condition was in fact dangerous and they did not know the condition was not visible to a patron in the exercise of reasonable care.

It would have been proper for plaintiff to have shown similar accidents and that defendants knew of them. We held evidence of similar accidents admissible to show knowledge of a dangerous condition in Lindquist v. Des Moines Union Ry. Co., 239 Iowa 356, 30 N.W.2d 120. And in Jackson v. Chicago, M., St. P. & P. R. Co., 238 Iowa 1253, 1264, 1265, 30 N.W.2d 97, 103, 104, after a thorough examination of the authorities we held the absence of accidents at the same place as tending to show absence of danger and lack of knowledge thereof by a party claimed to be at fault admissible. See also Wigmore's Code of Evidence, rule 66, article 7, section 443; rule 77, article 4, section 536; and McCormick on Evidence, section 167, pages 353, 354.

█ III. Plaintiff next contends the trial court failed to properly instruct the jury concerning the duty of defendants to maintain their premises in a safe condition for its intended use by the plaintiff as an invitee. The determination of instruc-

tions depends upon the case pleaded and evidence presented. In plaintiff's petition we find no allegation touching maintaining or keeping the premises in a safe condition. In his specifications of negligence we find two directed to the number and qualifications of lifeguards (discussed in Division IV), five are directed to warning the plaintiff of the depth of the water, and one to operation, management and supervision. And there is no evidence of a dangerous condition other than the shallowness of the water at the place of plaintiff's dive. With this condition present it was defendants' duty to warn plaintiff if plaintiff in the exercise of reasonable care could not know of the condition. We have pointed this out in the following cases: Robinson v. Fort Dodge Limestone Co., 252 Iowa 270, 106 N.W.2d 579; Vollmar v. J. C. Penney Co., 251 Iowa 1026, 103 N.W.2d 715; Denison v. Wiese, 251 Iowa 770, 102 N.W.2d 671; Schafer v. Hotel Martin Co., 249 Iowa 866, 89 N.W.2d 373; and Atherton v. Hoenig's Grocery, 249 Iowa 50, 86 N.W.2d 252. See also annotation, 48 A. L. R.2d 129, 148. A clear statement of defendants' duty is found in Atherton v. Hoenig's Grocery, supra, at page 55 of 249 Iowa and page 255 of 86 N.W.2d. It is:

"* * * The possessor of real estate is not an insurer of the safety of those who come upon his premises by invitation, express or implied. Negligence is predicated upon an unperformed duty. The duty owed by the inviter is to those, and to those only, who do not know, or, in the exercise of reasonable care for their own safety, have no reasonable means of knowing, of defects or dangers. He may avoid liability in two ways: by making and keeping his lands safe or by warning of the dangers."

▇ The depth of the water in this case was not a defect or danger to plaintiff if he knew the depth. The case presented was, were the circumstances such defendants had the duty to warn? The trial court adequately instructed thereon. The court did instruct it was the duty of the defendants to use reasonable care for the safety of their patrons in view of the use of the premises that might reasonably be anticipated and plaintiff had the right to assume defendants had performed such duty. This was substantially plaintiff's requested instruc-

tions numbers one and two. Under the record made there is no reversible error.

IV. Finally plaintiff complains because the trial court did not submit the issue of whether defendants failed to have a sufficient number or qualified and attentive lifeguards on duty to supervise the use of the pool. Plaintiff does not advise us of what supervising the lifeguards would or could have done that would make their absence or attentiveness pertinent other than to warn plaintiff of the depth of the water. We have examined plaintiff's requested instruction number three and his objections to the instructions to which he has directed us and find in his requested instruction number three that he refers to the duty to supervise the use and to warn invitees. The duty to warn by posting signs or otherwise warn was submitted to the jury. It was not necessary that defendants warn plaintiff in any particular way, it was their duty to bring the condition to his knowledge by any reasonable means, if he was not aware of it in the exercise of reasonable care. He is only entitled to the defect or danger being called to his attention, not that it be called to his attention in a particular way.

Plaintiff urges our holding in Langheim v. Denison Fire Department Swimming Pool Assn., 237 Iowa 386, 21 N.W.2d 295, establishes the duty of the owner of a swimming pool to exercise ordinary care to provide a reasonably sufficient number of competent attendants for the purpose of guarding against injuries to patrons. Under the facts of the Langheim case such is not incorrect. There, however, the question was that of effecting the rescue of a child who could not swim well. The attendant or lifeguard, if his attention had not been directed to other matters, could have been in a position to observe and rescue the child, or if there had been more attendants on duty a rescue might have been effected. In this case, as above pointed out, there is no evidence or suggestion of anything an attendant or lifeguard could do except warn plaintiff. The duty to warn was submitted. See Hecht v. Des Moines Playground and Recreation Assn., 227 Iowa 81, 287 N.W. 259.

Finding no reversible error, the case is affirmed.—Affirmed.

All JUSTICES concur except PETERSON, J., who takes no part.