Glenn and Sylvia MEEKER, Donald and Louise DeWitt, Sr., Alan A. and Julie Busch, Sr., Harold C. Stearns, Lloyd and Sandra Bousman, Randall and Carolyn Ewalt, Bernice Kuhse, Frieda Rannfeldt, Jess and Mary Robbins, Daniel R. Jones, Sikie Hass, A. L. Cheramy, Reuben Dyrdahl, d/b/a Dahl Construction Company, Robert and Donna Piper, Donald and Dixie Zimmerman, and Harold G. and Elayne E. Anderson, Appellants,

v.

CITY OF CLINTON, a Municipal Corporation and the Chicago and Northwestern Transportation Company, Appellees.

No. 59113.

Supreme Court of Iowa.

Nov. 23, 1977.

McDonald, McDonald & Stonebraker, Davenport, for appellants.

Lane & Waterman, Davenport, and Bruce C. Johanson, City Atty., Clinton, for appellee.

Gamble, Riepe, Burt, Webster & Fletcher, Des Moines, for appellee, Chicago and Northwestern Transp. Co.

Heard before MOORE, C. J., and MASON, LeGRAND, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

Plaintiffs, Glenn and Sylvia Meeker, appeal from the trial court's order granting defendants judgment notwithstanding the verdict and in the alternative granting defendants a new trial in a law action brought to recover damages alleged to have been sustained as a result of flooding in a section of Clinton, Iowa.

On May 16 and 17, 1974, a flood occurred in a section of the City of Clinton when Mill Creek and Manufacturers Ditch overflowed their banks. August 12 over twenty individuals who lived in homes or owned businesses near the creek and ditch commenced the present action for damages ranging from $75.00 to $10,500.00 against the City of Clinton (the City) and the Chicago and Northwestern Transportation Company (the Railroad). Plaintiffs had alleged defendants were negligent in failing to remove debris from the creek and ditch and this debris caused the flood by which plaintiffs were injured as a theory for relief. Defendants in answer denied the material allegations of the petition.

After withdrawal or dismissal of some plaintiffs, the trial court for convenience separated the trial of Mr. and Mrs. Meeker, plaintiffs in the case before us. This case, tried only on the issue of liability, ended with a verdict for plaintiffs against both defendants. Defendants' post-trial motions for judgment notwithstanding the verdict and for new trial were granted and plaintiffs' motions to reconsider the separation order and for summary judgment were denied.

June 4, 1975, the day before trial, during an off-the-record pretrial conference, the court ordered the trials separated to avoid problems it envisioned concerning the huge number of verdict forms necessary to submit to the jury if all plaintiffs were to proceed to trial against the two defendants. Because of the minimal discussion on the record, it is impossible to determine whether plaintiffs objected at this point to the separation order. At the next pretrial conference the following day plaintiffs did object to the order and their objections were overruled by the court which stated they had agreed to its order at the conference the day before.

At trial plaintiffs attempted to show the debris in Mill Creek around the Railroad's trestle acted as a dam thereby causing the flow of the river to cease. According to plaintiffs the water then began flowing upstream to a point six miles away where it overflowed its banks and flooded the area in which plaintiffs' home was located. Plaintiffs also attempted to show the same general effect occurred in Manufacturers Ditch causing its waters to overflow at various points thereby adding to the flood which caused plaintiffs' damage.

By way of proof of these theories plaintiffs introduced the testimony of lay witnesses who lived in the inundated area. All but two of these witnesses were plaintiffs in the original action. Most of these witnesses testified, over objection, to the causes and effects of a flood which occurred in this area in 1973. The objections interposed by the Railroad on the grounds this testimony was incompetent, immaterial and irrelevant were overruled by the court.

Two of plaintiffs' witnesses who were originally plaintiffs were allowed to testify over defendants' objections of no proper foundation, incompetency, immateriality and irrelevancy that in their opinion the cause of the 1974 flood was the debris in the creek and the ditch.

In this hotly contested trial many objections were raised to the testimony and exhibits the parties attempted to have admit-

ted. The substance of this evidence and the objections to its admission will be discussed later.

At the close of plaintiffs' evidence the City moved for a directed verdict and the Railroad moved for involuntary dismissal and to strike certain testimony. In these motions defendants contended plaintiffs' evidence was insufficient to establish negligence or proximate cause as to either defendant. The court reserved ruling on these motions and the trial continued. At the close of all evidence defendants renewed their motions which were then denied.

Before closing arguments, the City objected to several of the trial court's proposed instructions. After the court had redrafted some of them, it overruled the City's objections to the extent they were cured by the redrafting.

During unrecorded final argument plaintiffs' counsel apparently referred to the Railroad's engineering witness as a witness for hire and in his explanation of the testimony received at trial intermingled the evidence of the 1973 and 1974 floods. Immediately after the arguments, the Railroad moved for a mistrial on the grounds there was no evidence the witness was compensated and plaintiffs' counsel had confused the jury by intermingling the testimony about the two floods. This motion was denied.

After verdict for plaintiffs both defendants filed post-trial motions. The City moved for stay, for judgment notwithstanding the verdict or new trial. It based its judgment motion on plaintiffs' failure to prove causation as a matter of law. It based its new trial motion on the following brief and general grounds: (1) the verdict was not sustained by the evidence; (2) there were errors of law in the admission of exhibits; (3) there were errors of law in the instructions; and (4) the grounds asserted in its judgment motion were also applicable here.

The Railroad's motion for judgment notwithstanding the verdict was based on plaintiffs' failure to introduce sufficient competent evidence to warrant a finding the Railroad was guilty of negligence or that its negligence, if any, was the proximate cause of the flood. In its motion for new trial the Railroad asserted the court had erred in admitting lay opinion testimony; in admitting testimony relative to the 1973 flood; in instructing the jury; and in failing to sustain the Railroad's motion for mistrial.

In plaintiffs' motion to reconsider the separation order they asserted no reason existed for the separation since the court had withdrawn from consideration the issue of contributory negligence. While awaiting a ruling on this motion, plaintiffs sought a writ of certiorari from this court which was subsequently denied.

The trial court ruled December 19, 1975, as follows:

" * * *

"The Court had serious reservations as to the sufficiency of plaintiffs' case in overruling [at the close of all the evidence] the motions for directed verdict. However, in accordance with recommended practice, the trial court concluded to submit the case to the jury and thereafter rule on the sufficiency of the evidence on post-trial motions in the event of a verdict for plaintiffs, which verdict did in fact result.

"The Court now rules that defendants were entitled to a directed verdict at the end of all the evidence; that plaintiffs' allegations as to proximate cause are not supported by substantial, competent, preponderant evidence; that the preponderance is otherwise and favors defendants and that their motions must be sustained.

"Without undertaking a review of the voluminous testimony, the record as a whole discloses that on May 16, 1974, Mill Creek overflowed its banks at Harts Mill Road Bridge in Clinton, Iowa as a result of heavy rains upstream in the watershed of Mill Creek, discharging a large volume of water easterly into a 'valley' flood plain * * * causing flooding well above the top of drainage ditches and the same cannot be attributed to the negligence of defend-

ants in permitting obstructions downgrade and downstream in Mill Creek, in ditches, at trestles or in culverts southerly of plaintiffs' place or to negligence in failing to dredge silt from the bottom of the five foot to six foot drainage ditches which were completely inundated in the plaintiffs' area. Plaintiffs' lay witnesses, interested in similar claims of their own, were allowed to give their opinions and testimony to the contrary, over objection, but their self-serving testimony is not found credible and the competency and admissibility thereof is seriously questioned.

"The whole record discloses that plaintiffs' flooding would have occurred in any event and without any negligence of defendants in the respects claimed. No portion of plaintiffs' damage, moderate as it was, is shown proximately caused by or allocated to the negligence of either defendant.

"The Court concludes that plaintiffs failed to generate a jury question as to proximate cause * * *."

The parties framed the following issues for our consideration:

1. Did the trial court abuse its discretion in ordering sua sponte a separation of plaintiffs for the purpose of trial where over twenty plaintiffs joined together to assert individual claims against two defendants?

2. Did the trial court err in admitting testimony as to the cause of a 1973 flood in a case concerning the cause of a 1974 flood?

3. Did the trial court err in admitting the opinions of two nonexpert witnesses as to the cause of the 1974 flood where neither witness observed the cause of the flood?

4. Did the trial court err in admitting plaintiffs' exhibits and excluding those of the City?

5. Did the trial court err in refusing to admit opinion testimony of the City's witness on the grounds the witness was not an expert?

6. Did the trial court err in its instructions?

7. Did the trial court err in not granting the Railroad's motion for mistrial grounded on alleged misconduct by plaintiffs' counsel in his closing argument?

8. Did the trial court err in determining plaintiffs' evidence was insufficient to support the jury's finding defendants were negligent or that this negligence caused the flood whereby plaintiffs were injured?

■ I. Plaintiffs maintain the trial court abused its discretion under rule 186, Rules of Civil Procedure, by ordering sua sponte a separation of plaintiffs for purposes of trial.

As stated, there is so little on this subject in the record that this court cannot determine whether plaintiffs objected to the order. However, the record does disclose that when plaintiffs objected to the separation the next day the court pointed out "it was the impression of the Court that we had this matter pretty well threshed out yesterday; that the conclusion was that there were almost insurmountable difficulties and inconveniences involved in submitting all of the cases to the jury. * * * I think the prior ruling, which was possibly more or less concurred in by everyone present yesterday, should stand and, if there is a formal exception, it is overruled."

Assuming arguendo plaintiffs' objections raised at the second conference were timely we find them to be without merit. These objections can be summarized as follows:

1. The cases had been treated as combined until the conference and none of the parties had moved for separation;

2. The ruling will lead to a multiplicity of actions which is not necessary to avoid confusion;

3. It will not be possible because of the excessive cost of separate trials for each plaintiff to continue its action because the damages claimed by these plaintiffs are not enough to justify the expense of a separate suit;

4. The court is incorrect as to the large number of verdict forms it sees necessary to submit to the jury. The court could work out a solution without separating the trials.

These objections while noteworthy do not consider the situation in which the court found itself. The court explained in its order it was faced with the following problems:

"* * * [T]he practical real difficulties in the trial of this case from the standpoint of the different evidentiary matters involving each party thereto * * * and the horrendous problems involving the instructing of the jury and the preparation of the general verdict forms and instructions thereon."

Particularly pertinent to this issue is the publisher's comment to rule 186, 2 Iowa Rules of Civil Procedure Annotated (1970), p. 578, which is as follows:

"* * * It is the interest of efficient judicial administration which is to be considered, rather than the wishes of the parties. * * * [citing authority]. The trial piecemeal of separate issues in a single suit is not to be the usual course. It should be resorted to only in the exercise of informed discretion and in a case and at a juncture which move the court to conclude that such action will really further convenience or avoid prejudice. * * * [citing authority]."

In the present case the court viewed its action as being in the interest of efficient judicial administration. This was not a piecemeal trial of separate issues in a single suit but rather a trial of a separate issue in twenty suits against two defendants. The court in the interest of efficient judicial administration could not give way to the wishes of one side. The court was faced with a difficult if not impossible situation.

The fact the court ordered the separation sua sponte is not error. In *Folkner v. Collins*, 249 Iowa 1141, 1144, 91 N.W.2d 545, 546, the court stated: "Rule 186, R.C.P., is substantially the same as rule 42(b) of the Federal Rules of Civil Procedure * * *." Under Federal Rule 42(b) it has been held a trial court may order separate trials on its own initiative. See *Eastside Church of Christ v. National Plan, Inc.*, 391 F.2d 357, 359 (5 Cir. 1968), cert. den., 393 U.S. 913, 89 S.Ct. 234, 21 L.Ed.2d 198.

It is our view that the discretion which the trial court has to order separate trials under rule 186 was not abused under this record.

II. The trial court's ruling of December 19, 1975, which is being challenged by plaintiffs on this appeal sustained defendants' motions for judgment notwithstanding the verdict and in the alternative conditionally sustained both motions for new trial.

This procedure is authorized by rule 248(a), R.C.P., in this manner:

"If the motion for judgment notwithstanding the verdict provided for in rule 243 is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless otherwise ordered by the supreme court. * * *."

Rule 243(b), R.C.P., provides:

"(b) If the movant was entitled to have a verdict directed for him at the close of all the evidence, and moved therefor, and the jury did not return such verdict, the court may then either grant a new trial or enter judgment as though it had directed a verdict for the movant."

The purpose of the quoted portion of rule 243(b) is to afford the trial court an opportunity to correct its error in failing to sustain a motion for directed verdict where the movant was entitled to a directed verdict at the close of all evidence and moved therefor and the jury did not return such verdict. *Dutcher v. Lewis*, 221 N.W.2d 755, 759–760 (Iowa 1974) and authorities cited.

A motion for judgment notwithstanding the verdict must stand or fall on the grounds urged in the movant's earlier motion to direct a verdict. See *Miller v.*

*Young*, 168 N.W.2d 45, 50 (Iowa 1969) and *Dutcher v. Lewis*, 221 N.W.2d at 760.

■ Our review is thus limited to the grounds urged in defendants' motions for directed verdict and for involuntary dismissal. The City's motions for directed verdict are predicated on the claim there was insufficient competent evidence to submit the issue of negligence or proximate cause to the jury. The Railroad's motion for involuntary dismissal is predicated on the same claim. Although the Railroad also made a motion to strike it was not ruled on and is not involved in this appeal.

The motions challenge the sufficiency of the evidence to generate a jury question.

■ In determining whether a jury question was engendered when a party seeks a directed verdict, dismissal, or judgment notwithstanding the verdict, the trial court views the evidence in the light most favorable to the party against whom the motion was made regardless of whether such evidence is contradicted and every legitimate inference which may be reasonably deducted therefrom must be carried to the aid of the evidence and if reasonable minds can differ on the issue it is for the jury. *Schiltz v. Cullen-Schiltz & Assoc., Inc.*, 228 N.W.2d 10, 17 (Iowa 1975).

■ Our function is to review the evidence to determine, not whether it proves defendants' negligent maintenance caused the flood to occur, but whether it is sufficient so the trial court was justified in submitting the question to the jury as the trier of facts. *Miller v. Young*, 168 N.W.2d at 51.

In determining this issue this court views the evidence in accordance with the same principles required for review by the trial court. *Schiltz v. Cullen-Schiltz & Assoc., Inc.*, 228 N.W.2d at 17.

As indicated, plaintiffs alleged in their petition defendants were negligent in their maintenance of Mill Creek and Manufacturers Ditch. It was claimed defendants allowed the buildup of debris in the areas and around the structures under their control. This debris was alleged to have acted as a dam thereby causing the flood.

The essential elements of a claim for relief based on the theory of negligence are stated in Prosser on Torts (Fourth Ed.), section 30, in this fashion:

"1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.

"2. A failure on his part to conform to the standard required. * * *

"3. A reasonable close causal connection between the conduct and the resulting injury. This is what is commonly known as 'legal cause,' or 'proximate cause.'

"4. Actual loss or damage resulting to the interests of another. * * *."

For a similar statement of the essential elements of a claim for relief based on negligence see Restatement, Second, Torts, section 281.

The issue is whether plaintiffs generated a jury question as to the first three of these essential elements.

The City had conceded in its opening statement that it had an obligation to clean the ditch but denied it had any duty to keep the creek in proper condition and repair and free from obstructions.

A general statement, with footnotes omitted, as to the duty of a municipality in regard to maintenance of a watercourse within its boundaries is found in 18 McQuillin, Municipal Corporations, 3rd Ed. Revised, section 53.132:

"To constitute a watercourse, as distinguished from surface waters, it is necessary that there be a stream of water flowing through a well-defined bed or channel with sides or banks and a permanent source of supply. It is not essential that it be uniform or uninterrupted. It is sufficient if it is usually a stream of running water. Where a watercourse, as thus defined, passes through the boundaries of a municipality, there is no duty on its part to keep the stream in a safe condition or free from obstructions; and this is so although the stream has been declared a public highway

by statute. So a municipal corporation is not liable at common law for failure to abate the natural and ordinary flooding of lands on the bank of a navigable stream. Furthermore, the fact that a municipality undertakes to remove obstructions, it being under no legal obligation to remove them, does not create any new liability."

Plaintiffs, on the other hand, insist the City was under a duty to maintain the creek because it exercised control and dominion over the creek through various City ordinances and actions. If the City did exercise control and dominion over the creek it was indeed under a duty to maintain it.

In 63 C.J.S. Municipal Corporations § 876, p. 259, is the following statement:

"In most jurisdictions where a municipal corporation constructs sewers and drains, it becomes its duty to see that they are maintained and kept in repair; and a municipality may be held liable for misfeasance or nonfeasance in the performance of its duty to exercise reasonable care in the maintenance of its sewers, drains, and watercourses and to keep them in reasonable repair and free from obstruction, at least where they have become defective to the knowledge, actual or constructive, of the municipality; * * *."

This statement is closely followed by the following pertinent comment at § 877, p. 262:

"The rule as to municipal liability for defects and obstructions in sewers and drains, as considered supra § 876, remains the same whether a natural watercourse is adopted for drainage purposes or an artificial channel is built; * * *. Where a city adopts a natural watercourse for sewerage or drainage purposes, it has the duty to keep it in proper condition and free from obstructions, and it is liable for damage resulting from neglect therein."

This same point is made in 57 Am.Jur.2d, Municipal, Etc., Tort Liability, section 215, p. 193, where it is stated:

"The fact that the particular drain may be a natural watercourse rather than an artificial construction does not alter the rule of municipal liability for damage resulting from obstructions, so long as the municipality has adopted the sewer or drain for drainage purposes and assumed control over it. Thus, it has been held that a municipality is liable for damages to adjoining landowners resulting from its negligence in not keeping a drain or sewer free from obstructions, whether the drain or sewer is a natural stream adopted for drainage purposes or an artificial channel."

In light of the foregoing statements of law we must determine whether plaintiffs have introduced sufficient competent evidence to warrant submission to the jury of the question whether the City had adopted the creek as a part of its drainage system by the exercise of control and dominion over it.

As bearing on this question plaintiffs offered in evidence a 1973 letter from the city engineer, Mr. Niebuhr, to the Railroad requesting they clear debris from their trestle crossing the creek. This letter was sent in response to a city council order. The night before the letter was sent concerned citizens appeared at the city council meeting demanding the city do something about the debris which had acted as a dam causing the river to flood. In this context the letter does little to prove the City exercised such control over the creek as to have a duty to maintain it.

There was also testimony of a city employee that at the Railroad's subsequent request city workers cleaned up the debris. The Railroad paid the City to do this job. This, in the context of the situation in which the City found itself, does little to support plaintiffs' proof of duty.

Even if we were to hold the foregoing evidence was sufficient to raise a jury question as to the existence of a duty on the part of the City in regard to the maintenance and care of the creek, plaintiffs' problem would not be solved. They would still be faced with the burden of persuasion as to negligence and proximate cause, the second and third essential elements of a claim for relief based on negligence.

III. In connection with the issue of negligence it is our opinion a municipality is not an insurer of the condition of its drains and watercourses. In order to charge it with damage occasioned by defects or obstructions therein negligence must be proven, that is, it is not liable except for negligence in the performance of its duty. See 18 McQuillin, Municipal Corporations, 3rd Ed. Revised, section 53.125, p. 479.

The standard of care imposed on the City as to the ditch was a duty to exercise reasonable care in the maintenance of the ditch and to keep it in reasonable repair and free from obstruction. If there were a duty on the part of the City to maintain the creek the standard of care required of the City would be same.

The trial court had submitted three specifications of negligence against the City: (1) consenting to, permitting or failing to eliminate obstruction of drainageways causing collecting and diverting of water to plaintiffs' property flooding the same; (2) failing to use reasonable diligence to prevent the construction of the railroad trestle so as to avoid obstruction and diversion of the creek drainage onto plaintiffs' property; and (3) failing to clean and direct ditches and culverts between Mill Creek and Rock Creek so as to permit maximum flow and prevent diversion of water onto plaintiffs' property.

The problem on review is to determine whether the jury in the exercise of its function as trier of the fact would be justified in finding plaintiffs had established by a preponderance of the evidence a breach of defendants' duty in one or more of the foregoing respects was a proximate cause of plaintiffs' injury.

The record discloses testimony debris caused the 1973 flood. There were photographs showing debris in 1975. There was evidence of debris in the ditch shortly after the 1973 flood. However, there is no evidence of any debris in either the creek or ditch prior to the 1974 flood.

Piper and Bousman who were plaintiffs in the original action expressed their opinions that debris caused the 1974 flood. Piper was allowed to testify over objection there was debris in Mill Creek before the 1973 flood and in his view this debris caused the 1973 flood. He was allowed to express his opinion, over objection, the cause of the 1974 flood was debris which had accumulated at the railroad trestle and acted as a dam. It was shown on cross-examination Piper did not observe the cause of the 1974 flood.

Bousman was allowed to testify, over objection, there was debris in the ditch prior to the 1973 flood and that it worsened after the 1974 flood. He testified, over objection, this debris was not cleared out of the ditch until after the 1974 flood. On cross-examination Bousman admitted the ditch had not flooded when the creek began to flood in 1974. He admitted the water that caused his damage came from the creek. He admitted he had not seen the ditch since shortly after the 1973 flood. The only place he saw the river leave its banks was six miles upstream from the railroad trestle. He did not observe the cause of the 1974 flood.

The trial court found the opinions and testimony of these two witnesses to be self-serving and without credibility. In our review of a judgment notwithstanding the verdict we do not determine the credibility of witnesses. *Jones v. O'Bryon*, 254 Iowa 31, 37–38, 116 N.W.2d 461, 465.

It is true, of course, nonexpert witnesses who possess special knowledge may testify as to their opinions of causes of events within their special knowledge. It is also true such opinions must be based on observations of these witnesses. This was explained in *Ruby v. Easton*, 207 N.W.2d 10, 20 (Iowa 1973), where we stated:

" * * * 'Whenever the opinions, conclusions, or impressions of a nonexpert witness are offered in evidence, the witness must have observed the facts and have acquired sufficient knowledge to form an opinion that can reasonably be expected to be reliable and trustworthy. * * * [citing authority]. No such foundation was

shown here, and the witness was asked for and permitted to make an uninformed guess.' "

This same point was made in McCormick, Opinion Evidence in Iowa, 19 Drake L.R. 245, 252, where it is stated:

"Such nonexpert opinions are generally permitted where three conditions are met: (1) the witness has made observations of specific events or conditions; (2) he has sufficient intelligence to draw proper inferences from such observations; and (3) such opinions from special knowledge will assist the jury more than if the witness were limited to the specific detail."

■ It is obvious Piper and Bousman should not have been allowed to express their opinions as to the cause of the 1974 flood because they did not observe the cause of the flood. They had no special knowledge with which the jury would be aided.

Plaintiffs maintain if these witnesses were not able to express their opinions, they were still able to give a shorthand rendering of facts to the same effect.

We have approved and allowed this form of testimony many times in Iowa. As stated in *Waterloo Sav. Bk. v. Waterloo, C. F. & N. R.*, 244 Iowa 1364, 1374, 60 N.W.2d 572, 578: " * * * The kind of testimony to which defendant objects here has been described as a 'shorthand' rendering of facts. It is, in fact, not really an opinion, but at most a conclusion drawn from facts of common *observation*." (Emphasis supplied).

This type of testimony was succinctly explained in McCormick, Opinion Evidence in Iowa, 19 Drake L.R. at 248:

"Certain observations of witnesses which are really based upon inference may nevertheless be expressed in evidence by reason of necessity [expediency and convenience]. Thus, a witness, having made observations but unable to orally produce the details sufficiently to give a jury a precise understanding of what was observed, may give his conclusion to express his impression of such composite facts. This has been best

described as *permissible shorthand rendering of the facts*. The expressed inference is proper if it necessarily implies the existence of the *observed* but unstated facts and if within the range of common knowledge. It includes testimony to ordinary cause and effect." (Later emphasis supplied).

■ The basic requirement for a witness who is not testifying as an expert is that his testimony be founded upon personal knowledge, whether the testimony be the expression of the witness' opinion or a shorthand rendering of fact. See *Hegtvedt v. Prybil*, 223 N.W.2d 186, 189–190 (Iowa 1974); Fed.Rules Evid.Rule 701; Uniform Rules of Evidence (1974), Rule 701; Opinion Evidence in Iowa, 19 Drake L.R. at 252; Ladd, Expert and Other Opinion Testimony, 40 Minn.L.R. 437, 438.

Piper and Bousman observed the 1973 flood but not the 1974 flood; therefore, their conclusions as to the cause of the later flood were mere guesses and should not have been admitted.

Evidence from plaintiffs' other lay witnesses was admitted on the claim it was evidence of similar acts. We have allowed evidence of similar acts many times in Iowa. See for example, *Burris v. Titzell*, 189 Iowa 1322, 1336–1337, 177 N.W. 557, 563, mod. on reh. 189 Iowa 1322, 179 N.W. 851; *Nelson v. Langstrom*, 252 Iowa 965, 970, 108 N.W.2d 58, 61; *Davis v. L & W Construction Company*, 176 N.W.2d 223, 227 (Iowa 1970); *Northrup v. Miles Homes, Inc. of Iowa*, 204 N.W.2d 850, 856 (Iowa 1973).

This evidence must be relevant to be admitted. As we stated in *Davis*, 176 N.W.2d at 227:

Without question, relevancy must be established as a condition to introduction of evidence regarding similar events or occurrences.

"Stated otherwise, as the court said in *Poston v. Clarkson Construction Company*, Mo.App., 401 S.W.2d 522, 526, after first citing 2 Wigmore on Evidence, Third Ed., section 442, p. 424, and section 443, page 427: ' * * * evidence of other instances of similar result from a common cause are

only logically relevant when the essential circumstances are sufficiently similar to exclude a reasonable likelihood of the same result being produced by a different cause in the two instances. * * *.' "

■ Evidence of similar occurrences is not relevant to the issue of causation of the occurrence in question in the absence of proof of substantial similarity of all conditions that might enter into or affect causation. *Crouch v. National Livestock Rem. Co.*, 205 Iowa 51, 61–63, 217 N.W. 557, 562–563, and authorities cited.

■ We conclude in the present case the essential circumstances of the two floods are not sufficiently similar to exclude a reasonable likelihood of the same result being produced by a different cause in the two instances. There was no evidence of debris in the creek at the time of the 1974 flood. In fact the creek had been cleared of debris after the 1973 flood. There was no evidence the debris in the ditch caused the flood. In fact Bousman testified the water in the ditch was still flowing when the creek was overflowing.

We agree with the trial court's finding this evidence lacked credibility. This evidence is irrelevant. See Fed.Rules Evid. Rule 401; Uniform Rules of Evidence (1974), Rule 401.

We conclude the evidence in this record was insufficient to warrant the trial court in submitting to the jury as the trier of fact the question whether some alleged breach of duty by the City was a proximate cause of plaintiffs' injury. Plaintiffs failed to sustain their burden of persuasion. The trial court was correct in awarding the City judgment notwithstanding the verdict.

■ IV. We now turn to the sufficiency of the evidence against the Railroad. Did the Railroad have a duty to maintain the Mill Creek trestle? Did it breach that duty? Was its negligence, if any, the proximate cause of plaintiffs' injury? The Railroad admitted it had a duty to maintain the trestle so we need only look to the last two questions.

The trial court submitted the following specifications of negligence in plaintiffs' claim against the Railroad:

"1. In constructing a trestle over Mill Creek, and the approach thereto, in such a manner as to permit the collecting of debris in dam-like structures so as to impound waters upon the property of plaintiffs by keeping the same from draining away in the usual and natural course of drainage.

"2. In failing to construct and install culverts in the mound supporting the track which would be adequate in size to allow escape of water and debris associated with drainage.

"3. In constructing culverts in the mound supporting the track in such a manner as to be 'tilted' at an angle which prevented escape of water and debris in the normal course of drainage.

"4. In constructing pilasters supporting the track over Mill Creek of such a size and with insufficient space between the same so as to permit escape of water and debris in the natural course of flow and drainage."

Much of what has been said about the testimony of Piper and Bousman is relevant here. There was no evidence the Railroad breached its duty to maintain the trestle. As explained earlier the trestle area was cleaned out after the 1973 flood. No evidence was presented there was debris near the trestle prior to the 1974 flood. Here again the evidence was insufficient to justify a jury in finding plaintiffs had established by a preponderance of the evidence any breach of the Railroad's duty in one or more of the foregoing respects was a proximate cause of plaintiffs' injury. The only evidence presented showed excessive rain caused the 1974 flood. This is not and could not be linked to any negligence of the Railroad.

Since there was no submissible jury issue generated the court was correct in awarding the Railroad judgment notwithstanding the verdict.

In light of the determinations heretofore made on the various questions dealt with

we need not consider further the issues urged for review.

The case is therefore—Affirmed.